Danny J. MORRIS, Lucia R. Morris, and as Next Friend for M.M., a Minor Child, Appellants,

v.

TEXAS PARKS AND WILDLIFE DEPARTMENT and Sandra Carson, Appellees.

No. 13–05–647–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

May 24, 2007.

Arnold Gonzales, Jr., Corpus Christi, for appellants.

Robert F. Scheihing, Michelle Copeland, Adami, Goldman & Shuffield, Inc., San Antonio, Adam W. Aston, Austin, for appellees.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and GARZA.

## OPINION

Opinion by Justice RODRIGUEZ.

This appeal arises from (1) a motion to transfer venue and a plea to the jurisdiction granted in favor of appellee, Texas Parks and Wildlife Department (the Department), and (2) a motion for summary judgment granted in favor of appellee, Sandra Carson, against appellants, Danny J. Morris, Lucia R. Morris, and M.M., a minor child. By three issues, the Morrises contend that the Webb County trial court erred in granting the motion to transfer venue and that the Goliad County trial court erred in granting the plea to the jurisdiction and the motion for summary judgment. We affirm.

### I. Background

On March 30, 2002, the Morrises arrived at Goliad State Park (the Park) in Goliad County, Texas. Shortly after arriving at the Park, M.M., a three-year-old child, fell into a campfire ring allegedly containing coals or ash from a previous fire.[1] M.M. suffered second- and third-degree burns requiring medical treatment.

On August 1, 2002, the Morrises brought suit in Webb County against the Department alleging common-law negligence. On

---

1. Campfire ring and campfire pit are used interchangeably in the appellate record. For consistency, we will use campfire ring.

October 18, 2002, the Webb County trial court granted the Department's motion to transfer venue to Goliad County. Guided by this Court's decision in *State of Tex. Parks & Wildlife Dep't v. Morris*, 129 S.W.3d 804, 807–10 (Tex.App.-Corpus Christi 2004, no pet.), the Morrises amended their petition on March 30, 2004, to include a gross negligence claim. In addition, on March 30, 2004, the last day of the two-year statute of limitations, *see* Tex. Civ. Prac. & Rem.Code Ann. § 16.003(a) (Vernon Supp.2006), the Morrises named Carson as a defendant in the suit and asserted a claim of negligence against her. Carson, who was alleged to have been the last camper at the campsite in question, filed a motion for summary judgment. Additionally, in response to the Morrises' second amended petition, the Department filed a plea to the jurisdiction.

Following the filing of Carson's motion for summary judgment and the Department's plea to the jurisdiction, the Morrises filed their third amended petition developing their gross negligence claim against the Department and their negligence claim against Carson. They also responded to Carson's motion and the Department's plea, to which both Carson and the Department respectively replied. After hearing the plea to the jurisdiction and motion for summary judgment, the trial court granted both. This appeal ensued.

## II. Transfer of Venue

By their first issue, the Morrises contend that the Webb County trial court erred in granting the Department's motion to transfer venue to Goliad County.

### A. Standard of Review

■ To determine whether venue was proper, we consider the entire record. Tex. Civ. Prac. & Rem.Code Ann. § 15.064(b) (Vernon 2002). If there is any probative evidence in the record that venue was proper, we must uphold the trial court's determination on the matter of venue. *See Bonham State Bank v. Beadle*, 907 S.W.2d 465, 471 (Tex.1995).

### B. Applicable Law

■ The venue provision of the Tort Claims Act (the Act) governing the Morrises' claims against the Department, a governmental entity, provides that "a suit under this chapter shall be brought in state court in the county in which the cause of action or a part of the cause of action arises." Tex. Civ. Prac. & Rem. Code § 101.102(a) (Vernon 2005). Additionally, it is settled Texas law that the plaintiff is typically given the first venue choice in the filing of a lawsuit. *Tieuel v. S. Pac. Transp. Co.*, 654 S.W.2d 771, 775 (Tex.App.-Houston [14th Dist.] 1983, no writ). However, while plaintiffs are given the opportunity to file a suit in any county where venue is proper, transfer of the case to a county of proper venue is mandatory when the plaintiff cannot prove venue is proper in the county of suit. *Wilson v. Tex. Parks & Wildlife Dept.*, 886 S.W.2d 259, 260 (Tex.1994) (citing *Tieuel*, 654 S.W.2d at 775 (providing that by filing suit in a county where venue is improper, the plaintiff waived the right to choose the county of suit)).

### C. Analysis

The Morrises pleaded venue in Webb County under section 101 of the Texas Civil Practices and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.102(a) (Vernon 2005). In its motion to transfer venue, the Department agreed that the mandatory provision of section 101.102(a) controlled because the suit was for alleged personal injuries. However, it urged that venue was mandatory in Goliad County, not Webb County, because Goliad

County is "the county in which the cause of action, if any, or a part thereof arose." *See id.* We agree.

Section 101.102(a) of the Act provides the following: "A suit under this chapter shall be brought in the county in which the cause of action or part of the cause of action arises." *See id.* In their original petition, the Morrises alleged that M.M.'s injuries occurred at the Park in Goliad County. In their response to the Department's motion to transfer venue, the Morrises added, for the first time, that M.M. received extensive medical and psychological treatment in Webb County. Based on this asserted fact, the Morrises argued in their response and now on appeal, that venue would have been proper in both Webb County and Goliad County because part of their damages arose and continue to arise in Webb County where M.M. later received medical attention and treatment. The Morrises argue that section 101.102(a) clearly contemplates alternative venue choices in theory since suit may be brought in a state court "in which the cause of action or part of the cause of action arises." *Id.*

In the present case, however, all of the acts giving rise to the Morrises' cause of action occurred in Goliad County. The medical treatment received by M.M. in Webb County, that appellant now contends proves their "elemental damages" necessary for a gross negligence claim,[2] involves the treatment of injuries that arose in Goliad County. While it is possible that evidence of damages or injuries that occurred in Goliad County, including the cost of treatment for those injuries, might be available in Webb County, that evidence does not encompass the "essential facts" giving rise to a cause of action or a part of a cause of action. *See Krchnak v. Fulton,*

759 S.W.2d 524, 526 (Tex.App.-Amarillo 1988), *overruled in part on other grounds, Carpenter v. Cimarron Hydrocarbons Corp.,* 98 S.W.3d 682, 686 (Tex.2002) (providing that a cause of action "does not comprise every evidentiary fact, but does comprise every essential fact"); *see also Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 24–25 (Tex.1994) (explaining that gross negligence is the breach of duty involving an extreme degree of risk, considering the probability and magnitude of the potential harm to others (an objective element) when the actor has actual awareness of the risk involved but nevertheless proceeds in conscious indifference to the rights, safety, or welfare of others (a subjective element)).

The Morrises rely on *Wilson* for the proposition that since they chose an apparently proper venue, there can be no other proper venue to which their case may be transferred. *Wilson,* 886 S.W.2d at 261. However, *Wilson* is distinguishable from the present case. The lawsuit in *Wilson* dealt with alleged wrongful deaths (drownings) that occurred in Blanco County, as a result of negligent Department early flood warning practices drawn up and circulated in Travis County and implemented in Blanco County. *Id.* at 260. The plaintiffs in *Wilson* were found to have had proper venue in Travis County, despite the fact that the drownings occurred in Blanco County, because there was "probative evidence that acts giving rise to the Plaintiffs' cause of action occurred in Travis County." *Id.* at 262. Appellant's reliance on *Wilson* is misplaced.

Examining the full record, we find no essential fact, or act, that took place in Webb County that would give rise to a cause of action or part of a cause of action.

---

**2.** We note that the Morrises' gross negligence claim was not brought until they filed their

second amended petition after the motion to transfer venue was granted.

The Morrises did not choose a county of proper venue. There is probative evidence in the record that venue is proper in Goliad County. Therefore, we must uphold the trial court's determination on the matter of venue. We overrule the Morrises' first issue.[3]

## III. The Department's Plea to the Jurisdiction

By their second issue, the Morrises contend that the trial court erred in granting the Department's plea to the jurisdiction because material jurisdictional fact issues remain.

### A. Standard of Review

■ A plea to the jurisdiction is a dilatory plea, the purpose of which is to "defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). The plea challenges the trial court's jurisdiction over the subject matter of a pleaded cause of action. *Morris*, 129 S.W.3d at 807. Whether a trial court has subject matter jurisdiction is a question of law reviewed under the de novo standard. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004).

■ When a plea to the jurisdiction challenges the pleadings, we determine if the plaintiff has overcome the burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *Id.* (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993)). Rather than evaluating the claim's merits, we look to the pleader's intent and construe the pleadings liberally

in favor of the plaintiff. *Id.; Morris*, 129 S.W.3d at 807. To the extent it is relevant to the jurisdictional issue, we also consider any evidence submitted by the parties to the trial court. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 (citing *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex.2001)); *Bland*, 34 S.W.3d at 555.

■ If the pleadings do not contain facts sufficient to demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in the court's jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be allowed to amend the petition. *Miranda*, 133 S.W.3d at 226–27 (citing *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002)); *Morris*, 129 S.W.3d at 807. If, however, the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff to amend the petition. *Miranda*, 133 S.W.3d at 227; *Morris*, 129 S.W.3d at 807.

### B. Applicable Law

■ Under the common law doctrine of sovereign immunity, a governmental unit, such as the Department in this case, is immune from suit for the performance of governmental functions. *See City of Corpus Christi v. Absolute Indus.*, 120 S.W.3d 1, 3 (Tex.App.-Corpus Christi 2001, pet. denied). The Act, however, provides a limited waiver of the Department's sovereign immunity with respect to performance of its governmental functions in the following three areas: use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of

---

**3.** Taking all facts, including facts related to treatment, as true, because we have determined that the Morrises did not establish proper venue in Webb County based on those facts, we need not address their contention that the Department did not specifically deny venue facts. *See* Tex.R. Civ. P. 87(3)(a) (explaining that all venue facts, when properly pleaded, shall be taken as true unless specifically denied by the adverse party).

property. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215 (Vernon 2005); *Miranda*, 133 S.W.3d at 224–25. Section 101.058 of the Act further modifies the Department's waiver of immunity from suit by imposing liability limitations as set out in the recreational use statute. *Miranda*, 133 S.W.3d at 225; *see* Tex. Civ. Prac. & Rem.Code Ann. §§ 75.003(g), 101.0215, 101.058 (Vernon 2005); *Morris*, 129 S.W.3d at 809.

 The recreational use statute provides in pertinent part:

(c) If an owner, lessee, or occupant of real property other than agricultural land gives permission to another to enter the premises for recreation, the owner, lessee, or occupant, by giving the permission, does not:

(1) assure that the premises are safe for the purpose;

(2) owe to the person to whom permission is granted a greater degree of care than is owed to a trespasser on the premises; or

(3) assume responsibility or incur liability for any injury to any individual or property caused by any act of the person to whom permission is granted.

Tex. Civ. Prac. & Rem.Code Ann. § 75.002(c) (Vernon 2005); *see id.* § 75.003(c) (Vernon Supp.2006), §§ 75.003(g), 101.021, 101.0215 (Vernon 2005), § 101.022 (Vernon Supp.2006), § 101.058 (Vernon 2005); *see also Miranda*, 133 S.W.3d at 225; *Morris*, 129 S.W.3d at 810. Liability resulting from the breach of duty owed to a trespasser is when the premises owner causes an injury willfully, wantonly, or through gross negligence. *Miranda*, 133 S.W.3d at 225. In this case, the Department's waiver of sovereign immunity under the Act, if any, was limited by the recreational use statute to injuries caused through gross negligence.[4] *Id.*

## C. Analysis

 Assuming that a premises defect existed and, thus, the Department waived its immunity under the Act,[5] we address the Morrises' claim that the Department was grossly negligent under the recreational use statute because it failed to inspect the campsite and to maintain the

---

4. Gross negligence involves the following two components:

(1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

*Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 225 (Tex.2004) (citing *Louisiana–Pacific Corp. v. Andrade*, 19 S.W.3d 245, 246 (Tex.1999)).

5. To establish liability for a premise defect under the Act, a plaintiff must plead and prove either willful, wanton or grossly negligent conduct, or that the defendant had actual knowledge of the dangerous condition, the plaintiff did not, and the defendant failed to warn of the condition or make the condition safe. *City of Houston v. Harris*, 192 S.W.3d 167, 175 (Tex.App.-Houston [14th Dist.] 2006, no pet.). We note that in their third amended petition, the Morrises pleaded that the park employees were aware that visitors often failed to properly extinguish their campfires; left lingering fires at the campsites; and had actual awareness of the danger and risk involved as demonstrated by the fact that the park employees inspected and maintained the fire rings before and after visitors take possession of the campsite. Based on the pleadings, the Morrises pleaded facts that establish a waiver of immunity for a premise defect under the Act. *See id.* The Department concedes that the Morrises' allegations "amount to a premises-defect claim." Appellee's Brief at p. 7.

campfire ring.[6] *See State v. Shumake,* 199 S.W.3d 279, 287 (Tex.2006) (providing that the recreational use statute "permits a premises defect claim for gross negligence"). The Department has not disputed the factual allegations made by the Morrises. Rather, the Department asserts, as to the gross negligence claim, that the only duty it owed to the Morrises was that owed to a trespasser which did not include ensuring the safety of the campsite. We agree.

 "A landowner has no duty ... to protect trespassers from obvious defects or conditions." *Shumake,* 199 S.W.3d at 288. Moreover, the recreational use statute explicitly states that the landowner does not assure that the premises are safe for recreational purposes and that the landowner is not liable for any injury to any individual caused by any act of the person to whom permission is granted. Tex. Civ. Prac. & Rem.Code Ann. § 75.002(c)(1), § 75.002(c)(3) (Vernon Supp.2006).

 Looking to the pleader's intent, construing the pleadings liberally in favor of the plaintiff, and considering relevant evidence submitted by the parties to the trial court, we conclude that the Morrises have not overcome the burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *See Miranda,* 133 S.W.3d at 226. We cannot conclude the Morrises would not reasonably have expected to encounter a campfire ring that contained ashes or coals from a fire made the night before, in the

course of the permitted use of the property. *See Shumake,* 199 S.W.3d at 288. Under the facts of this case, we conclude this is a condition which is inherent in the use to which the land was put. *See id.* at 287–88. The Department had no duty to protect the Morrises from this obvious and expected condition. Therefore, assuming a premises defect and liability was waived, under the recreational use statute there can be no gross negligence on the part of the Department because we find no duty. The pleadings and relevant evidence affirmatively negate the existence of jurisdiction, therefore, the trial court did not err in granting the Department's plea to the jurisdiction. *Miranda,* 133 S.W.3d at 227; *Morris,* 129 S.W.3d at 807. We overrule the second issue.

### IV. Carson's Motion for Summary Judgment

By their third issue, the Morrises contend that the trial court erred in granting Carson's motion for summary judgment.

### A. Standard of Review

Because the granting of a motion for summary judgment is a question of law, we review the granting of a traditional motion for summary judgment de novo. *Branton v. Wood,* 100 S.W.3d 645, 646 (Tex.App.-Corpus Christi 2003, no pet.) (citing *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994); *Tex. Commerce Bank–Rio Grande Valley v. Correa,* 28 S.W.3d 723, 726 (Tex.App.-Corpus Christi 2000, pet. denied)). To prevail on a traditional motion for summary judgment,

---

6. The Morrises contend that the Department's plea is moot and should not have been granted because it does not address their failure to inspect and maintain allegations raised for the first time in their third amended petition. However, in their second amended petition they pleaded gross negligence against the Department for failing to provide a safe camp-

site, including the failure to have protective metal fire grills or rings around the campfire pit, when it was aware of the risk involved. The duty analysis in this case is inclusive of the allegations the Morrises develop in their third amended petition, and, thus, the plea is not moot.

the moving party has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam).

In reviewing a traditional summary judgment "all evidence is to be construed in favor of the nonmovant, to whom every reasonable inference is allowed and on whose behalf all doubts are resolved." *Alvarez v. Anesthesiology Assocs.*, 967 S.W.2d 871, 874 (Tex.App.-Corpus Christi 1998, no pet.); *see Cathey*, 900 S.W.2d at 341; *Branton*, 100 S.W.3d at 646. When, as in this case, a trial court's order granting summary judgment does not state the grounds upon which it was granted, the judgment must be affirmed if any of the grounds advanced in the summary judgment motion are meritorious. *Branton*, 100 S.W.3d at 647 (citing *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989)).

### B. Applicable Law

In order to prevail on their negligence claim against Carson, the Morrises are required to plead and to prove: (1) that Carson owed a legal duty to the Morrises; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *See Mellon Mortgage Co. v. Holder*, 5 S.W.3d 654, 663 (Tex.1999); *Koepke v. Martinez*, 84 S.W.3d 393, 396 (Tex.App.-Corpus Christi 2002, pet. denied); *Hanselka v. Lummus Crest, Inc.*, 800 S.W.2d 665,

667 (Tex.App.-Corpus Christi 1990, no writ).

"It is a well-understood rule that negligence is the doing of that which an ordinarily prudent person would not have done under the same or similar circumstances, or the failure to do that which an ordinarily prudent person would have done under the same or similar circumstances." *Buchanan v. Rose*, 138 Tex. 390, 159 S.W.2d 109, 110 (1942). The Morrises are not asserting that Carson did something she should not have done under the same or similar circumstances. *See id.* The Morrises are claiming that Carson was negligent in failing to do something which an ordinarily prudent person would have done under the same or similar circumstances which, in this case, would have been failing to totally extinguish the fire in the campfire ring when she left the camp site.[7] *See id.* Before we can determine whether Carson was negligent in failing to totally extinguish the fire in the campfire ring, however, we must determine whether she owed a legal duty to do so.

"The question of duty turns on the foreseeability of harmful consequences, which is the underlying basis for negligence. Foreseeability means that a person of ordinary intelligence should have anticipated the dangers that his negligent act created for others."[8] *Duge v. Union Pac. R.R. Co.*, 71 S.W.3d 358, 361 (Tex.App.-Corpus Christi 2001, pet. denied) (citations omitted). This is a question of law for the court to decide based on the facts sur-

---

**7.** The Morrises also contend that Carson failed to establish no proximate cause as a matter of law. However, the threshold issue in any negligence case is whether the alleged tortfeasor owes a legal duty to the injured party, *see Hancock v. City of San Antonio*, 800 S.W.2d 881, 884 (Tex.App.-San Antonio 1990, writ denied), and "[t]he nonexistence of a duty ends the inquiry into whether negligence liability may be imposed." *VanHorn v.*

*Chambers*, 970 S.W.2d 542, 544 (Tex.1998). Thus, we address the duty element first.

**8.** Foreseeability as it relates to duty is distinguished from foreseeability as a factor in determining proximate cause, which "delimit[s] the wrongdoer's responsibility because of the way or manner in which the accident happened." W. Page Keeton, *Negligence, Duty & Causation in Texas*, 16 Tex. L.Rev. 1, 9 (1937).

rounding the occurrence.[9] *See Greater Houston Transp. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *Union Pac. R.R. Co. v. Seymore,* 85 S.W.3d 162, 166 (Tex.2002).

In determining the question of duty, the court will consider several interrelated factors, including the foreseeability of the risk, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant.

*Duge,* 71 S.W.3d at 361; *see Golden Spread Council, Inc. v. Akins,* 926 S.W.2d 287, 290 (Tex.1996); *Graff v. Beard,* 858 S.W.2d 918, 920 (Tex.1993); *Greater Houston Transp.,* 801 S.W.2d at 525; *Otis Engineering Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983). Questions of duty have also turned on "whether one party has superior knowledge of the risk, and whether a right to control the actor whose conduct precipitated the harm exists." *Otis Engineering,* 668 S.W.2d at 309; *see Golden Spread Council,* 926 S.W.2d at 292; *Graff,* 858 S.W.2d at 920.

### C. Analysis

■ The Morrises contend that the factors in this case that establish a duty to totally extinguish the campfire in the campfire ring include the following: (1) that Carson should have known of the foreseeable risks of leaving a lingering campfire in a campfire ring, and (2) that Carson had "superior knowledge" of camping affording her a higher duty than that of an ordinary person. The Morrises cite no Texas case law, and we find none, imposing liability on a camper, even an expe-

rienced camper, for damages allegedly caused by the prior camper's failure to totally extinguish an in-ground, self-contained campfire at the camp site. There is no such duty in Texas. Nonetheless, the Morrises argue that Texas should recognize such a duty under the circumstances of this case. We decline to do so.

In this summary judgment proceeding, it is undisputed that three-year-old M.M. and his parents visited the Park on March 30, 2002. They were assigned shelter number three, a campsite which consisted of a screened-in shelter, a picnic table, a charcoal barbecue grill, and a campfire ring, one of two designated locations for a campfire at this camp site. Other family members were there for a family reunion. Soon after the Morrises arrived, M.M. fell into the campfire ring located at the campsite. The campfire ring contained ashes or coals, and M.M. received second-and third-degree burns on his hands, arms, and legs.

The summary judgment evidence establishes that Carson had been a camper at the Park on a number of occasions, that if it was cool at night she would build a campfire in a designated campfire area, that she was not given specific instructions about extinguishing any campfire upon her arrival or departure, and that when she had a campfire she would put water on it and make sure it was out. For purposes of the summary judgment proceeding, Carson also assumed, without admitting, that she left a campfire burning in the campfire ring at issue the night before the incident.

The summary judgment evidence also establishes that the purpose of a campfire

---

9. In some instances, when resolution of disputed facts or inferences is required, the question is inappropriate for legal resolution and becomes a fact issue for the jury. *Union Pac. R.R. Co. v. Seymore,* 85 S.W.3d 162, 166 (Tex. 2002); *Fort Bend County Drainage Dist. v.*

*Sbrusch,* 818 S.W.2d 392, 395 (Tex.1991). Based on our review of the record, however, there are no disputed facts or inferences that require resolution by a jury in order to determine the duty element in this instance.

ring is to house a safely contained fire. Rob Trippet, the Department's maintenance specialist, testified that campers are instructed only to build fires in designated areas and are not specifically instructed to extinguish their fires when they depart. Park Ranger Connie Lujan testified at her deposition that campers are not asked to put out fires upon their departure. Park Ranger Leopold Kunkel also testified that campers at the Park do not typically extinguish their fires in campfire rings upon departure, because, if they did, the next camper would not be able to make a fire. Finally, Park Ranger William Flores, who was serving as interim Park Director at the time of the incident, testified at his deposition that it is typical for campers to just leave whatever coals are burning when they depart.

### 1. Foreseeability

Taking all of the evidence and inferences from the evidence in support of the Morrises' position as true, we conclude that, by leaving a campfire burning in the campfire ring the night before the incident, it was foreseeable that Carson was creating a risk of harm to the next campers at that site. However, the campfire was left burning in a place designated for fires at that campsite. Thus, the foreseeability of the risk of harm to the next camper was lessened. Therefore, foreseeability weighs somewhat in favor of imposing a duty on Carson. "However, foreseeability alone is not sufficient to justify the imposition of a duty." *Golden Spread Council,* 926 S.W.2d at 290–91.

### 2. Risk and Likelihood of Injury

Based on the facts of this case, the risk and likelihood of injury are not high. The injured child was with family members who themselves were campers at the Park. The shelters were assigned to adults. The fire was made in one of the two designated areas for fires at the campsite. It was made the night before Carson checked out of the Park. Furthermore, the Park does not require or expect campers to extinguish fires in these designated campfire rings, suggesting that the risk and likelihood of injury when a campfire in the campfire ring is not totally extinguished is low. Finally, although the Morrises contend that a duty to extinguish the fire totally exists in this case because Carson had superior knowledge of the risks being an "experienced camper," we find no authority for this proposition and the Morrises provided none. We cannot conclude that camping experiences enhance awareness of risks such that a more stringent duty of care is required. Therefore, as set out above, we conclude that the risk and likelihood of injury are not high in this case.

Against the above factors we must also weigh the social utility of Carson's conduct, the magnitude of the burden on Carson, and the consequences of placing such a burden on Carson. *See Golden Spread Council,* 926 S.W.2d at 291.

### 3. Social Utility of Carson's Conduct

It is indisputable that the social utility of Carson's conduct in leaving the campsite in a safe condition is high. She, herself, testified that "[w]hen I go camping I expect the campsite to be clean and serviceable and—safe can mean a lot of things.... I think it's a personal responsibility for everybody to make sure that what they do is as safe as can be." When a campsite is left in a safe condition, public parks can be enjoyed by many. We cannot conclude, however, that by not extinguishing the fire in the campsite ring, Carson left the campsite in an unsafe condition. While the social utility for leaving a safe campsite is high, the social utility for leaving an unex-

tinguished fire started the night before in a designated area so that the next camper can use it to start his or her fire is also high.

#### 4. Magnitude of the Burden of Guarding Against the Injury and the Consequences of Placing the Burden on Carson

The duty the Morrises wish to impose would apparently attach in any setting where controlled campfires are allowed. As a practical matter, if such a duty attached a camper would have to decide whether to have a controlled campfire at all or to start the fire and then wait until the fire was totally extinguished before leaving. It is also unclear how a camper can reliably recognize when a campfire is "totally extinguished." Weather would be only one factor in making this determination. Furthermore, requiring the fire to be totally extinguished would also defeat the purpose of leaving a lingering fire to allow the next camper to start a fire easily. Thus, we conclude the magnitude and consequences of imposing this limited duty on a camper, such as Carson, are high.

On balance, all of the above factors favor the conclusion that there should be no duty to totally extinguish a fire in a campfire ring under the facts of this case.[10] We conclude that other social policies and concerns as well as the risk factor outweigh foreseeability.

Viewing all of these factors as a whole and finding no genuine issue of material

fact, *see* Tex.R. Civ. P. 166a(c); *Cathey,* 900 S.W.2d at 341, we conclude that Carson owed no legal duty to the Morrises to fully extinguish the campfire in the campfire ring. We decline to impose such a duty under the facts of this case. Thus, we conclude that summary judgment for Carson was proper as a matter of law. Having concluded no duty we need not address the Morrises' contention that Carson failed to establish no proximate cause as a matter of law. *See* Tex.R.App. P. 47.1. We overrule the third issue.

#### V. Conclusion

The judgment of the trial court is affirmed.

---

10. Control and relationship are additional factors some courts have considered in determining duty. We need not consider control as a factor because the facts of this case do not suggest a right to control the actor whose conduct precipitated the harm exists. *Graff v. Beard,* 858 S.W.2d 918, 920 (Tex.1993) (citing *see e.g., Joseph E. Seagram & Sons, Inc. v. McGuire,* 814 S.W.2d 385 (Tex.1991)) (declining to recognize a legal duty of an alcohol manufacturer to warn consumers against

danger of alcoholism because the risk is common knowledge); *Greater Houston Transp. Co.,* 801 S.W.2d at 525 (citing *Otis Engineering Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex. 1984); Restatement (Second) of Torts § 315 (1965) (noting that no general duty exists to control the conduct of others)). Neither is a legal relationship between the actor and the child in this case suggested, such that it would create a duty.