

# NUMBER 13-13-00324-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE BRIN & BRIN, P.C.

## On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Perkes
### Memorandum Opinion by Justice Perkes[1]

By petition for writ of mandamus, relator, Brin & Brin, P.C. ("B&B"), challenges an order denying its motion to transfer venue from Nueces County to La Salle County based on the mandatory venue provision governing "[a]ctions for recovery of real property or an estate or interest in real property." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011 (West 2002). We conditionally grant the petition for writ of mandamus as stated herein.

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

# I. BACKGROUND

The underlying proceeding arises from a dispute regarding attorney's fees. David Rumley, a former employee and shareholder of B&B, contends that the firm had a fee-sharing agreement with its employees and members regarding contingent-fee cases that they originated. According to Rumley, when B&B was paid money on contingency fee cases, the attorney responsible for bringing in the case and litigating it for B&B was to receive 50% of the fees, if any, paid to the firm for that matter. B&B denies the existence of any such agreement. The specific facts that engendered the underlying dispute are as follows.

In 1997, Rumley was responsible for originating a case brought on behalf of James L. Hearn and Ezra Alderman Ranches, Inc. against VirTex Petroleum Company, Inc. (the "Hearn matter"). The contingent fee contract between Hearn and B&B, signed on behalf of B&B by its then-president Ronald Brin, contained in part the following fee agreement:

> In consideration of the services to be rendered by the attorneys, the client hereby agrees to pay to the attorneys a sum of money as described below:
>
> (1) If the oil & gas lease or any part thereof as described herein is forfeited and/or terminated, the client hereby agrees to pay to the attorneys a sum of money equal to:
>
> (a) Twenty-Five (1/4) percent of any new bonus; and
>
> (b) One-thirty second (1/32) overriding royalty interest.

Rumley alleged that he conducted substantially all of the litigation on this case, resulting in a settlement in 2000. While "a fee was paid to B&B at that time, no money was paid to B&B to distribute pursuant to the compensation agreement for contingen[cy] matters." Instead, Hearn and Ezra Alderman Ranches, Inc. agreed that B&B's fee, if any, would be

2

paid to B&B through a mineral royalty interest assigned to B&B and through the future payment of a share of any bonuses paid for the lease of the property. Hearn assigned B&B a "nonparticipating royalty interest equal to an undivided 1/32 of 8/8 of all oil, gas, and other minerals produced" from 3,368.6 acres of land in La Salle County, Texas. Rumley provided the assignment to a partner at B&B and filed the assignment of nonparticipating royalty in the real property records of La Salle County.

According to Rumley's deposition testimony, he discussed the settlement with Crews and asked Crews about his payment on the case. Crews told him that "just like every standard deal, whenever the money comes, you'll get paid." Under this arrangement, Rumley was to receive fifty percent of the money received from the case after the deduction of expenses.

In 2002, Hearn leased some of the property assigned to B&B and made a cash payment of $15,620.25 to B&B from bonus money received for the lease. B&B paid half of the money collected, after deducting expenses, to Rumley. At that time, Rumley approached Ronald Brin for B&B with a proposed written assignment under which B&B would convey to Rumley one-half of the royalty interest. The assignment was not executed. According to Rumley, B&B told Rumley that an assignment was not necessary and that if the firm received any additional monies as a result of the Hearn case, the funds would be divided according to the fee-sharing agreement for B&B employees. In contrast, according to B&B, the assignment was "never presented to the owners of [B&B] for consideration."

3

Rumley thereafter voluntarily left B&B to form his own law firm. B&B did not thereafter pay Rumley for any money generated on the Hearn matter.

On April 26, 2011, B&B brought suit against Ezra Alderman Ranches, Inc. and Hearn for breach of contract, conversion, and negligence. B&B alleged that the defendants failed to pay B&B in accordance with the contingency fee contract on the Hearn matter. According to Rumley's deposition testimony, in 2012, Hearn called Rumley and told him that B&B brought suit against him regarding the assignment. Rumley subsequently telephoned George Brin and told him he was entitled to half of the attorney's fees on the case. After additional conversations, Rumley contacted B&B by email and asserted that he was entitled to 50% of the contingent fee that the firm received in the Hearn matter:

> As you now know, this was a file that I brought in, signed up, handled[,] and settled. I was introduced to the client by a former client.
>
> After meeting with the client, Mr. Hearn decided to hire me to represent his family. I then negotiated a fee contract with Mr. Hearn that was approved by [Ron Brin]. The fee agreement that was entered into between the client and [B&B] provided for the payment of the attorney fee in a mineral interest and not payment of royalties that they would receive at some date in the future. This is similar to other contingency fee arrangement[s] in which the parties agree to the transfer of stock or other property interest. As per the agreement, if we were successful, the attorney fee that would be paid is the conveyance of a mineral interest. The case settled in early 2000. Pursuant to this fee agreement, the client paid the attorney fee by conveying the mineral interest in 2000.
>
> As reflected in the file, and in particular in a memo to [a partner at B&B], the original copy of the [conveyance] of the mineral interest, was the fee on the case. Accordingly, the attorney fee was not payment of royalties at some future date but rather a mineral interest that was paid when it was conveyed.

4

According to the agreement in place at [B&B], any attorney who brought in a plaintiff case was entitled to 50% of the fee to the firm.

In Hearn, because the agreed upon fee to the firm in this case was the mineral interest which was paid in 2000 and because I brought in, handled, and settled the Hearn case, I believe that I am entitled to 50% of the fee to the firm or ½ of the 1/32 NPRI.

B&B refused to pay Rumley any monies generated by the Hearn matter. B&B denied the existence of any such fee-sharing agreement.

Rumley filed the underlying lawsuit against B&B in Nueces County Court No. Two for breach of contract, promissory estoppel, justifiable reliance, partial performance, unjust enrichment, and breach of fiduciary duty on grounds that B&B had received "a substantial payment of lease bonus money" and "has or shortly will result further in collection of money by B&B through the mineral royalty interest." In the alternative, Rumley sought declaratory relief. "Plaintiff's Second Amended Original Petition and Demand for Jury Trial," requested the following relief:

(1) A declaration that Plaintiff is entitled to 50% of any and all amounts paid to B&B (after adjusting for expenses) as a result of the Hearn matter;

(2) Actual damages for that portion of any amounts of money paid to B&B (after adjusting for expenses) as a result of the Hearn matter;

(3) Reasonable and necessary attorney's fees;

(4) Costs of court;

(5) Pre- and post-judgment interest as allowed by law; and,

(6) Any such further relief as the Court deems just.

According to the venue allegations in the second amended original petition, venue of the suit was proper in Nueces County because "Defendant maintains a principal

5

business office in Nueces County, Texas, and because all or a substantial part of the facts giving rise to this claim occurred in Nueces County, Texas." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(1) (West 2002) (providing for permissive venue under the general rule in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred); *Id.* § 15.002(a)(3) (providing for permissive venue under the general rule in the county of the defendant's principal office in Texas).

B&B filed a motion to transfer venue to LaSalle County on grounds that the action sought "recovery of an interest in real property that is located in La Salle County, Texas," and thus mandatory venue applied. *See id.* § 15.011. According to the motion to transfer, a royalty interest is an interest in real property, and the royalty interest attributable to the Hearn matter is located in La Salle County. Rumley filed a response in opposition to the motion to transfer.

On April 11, 2013, the trial court held a hearing on the motion to transfer. The trial court denied the motion to transfer venue by written order rendered on April 24, 2013. On May 23, B&B filed a motion for reconsideration. On May 31, Rumley filed a response thereto. The trial court held a hearing on the motion to reconsider on June 6, 2013, and denied reconsideration.

This original proceeding ensued. By one issue, B&B contends that the trial court abused its discretion by denying its motion to transfer venue to LaSalle County when venue is mandatory there. This Court requested and received a response to the petition for writ of mandamus from Rumley. B&B has further filed a motion for temporary emergency relief and Rumley has filed a response thereto.

6

## II. MANDAMUS

The general rule is that a venue ruling is not a final judgment ripe for appeal. *See id.* § 15.064(a) (West 2002); TEX. R. CIV. P. 87(6) ("There shall be no interlocutory appeals from such determination."). Section 15.0642 of the civil practice and remedies code, however, provides for mandamus relief to enforce a mandatory venue provision:

> A party may apply for a writ of mandamus with an appellate court to enforce the mandatory venue provisions of this chapter. An application for the writ of mandamus must be filed before the later of:
>
> (1)    the 90th day before the date the trial starts; or
>
> (2)    the 10th day after the date the party receives notice of the trial setting.

TEX. CIV. PRAC. & REM. CODE ANN. § 15.0642 (West 2002); *In re Transcon. Realty Investors*, 271 S.W.3d 270, 271 (Tex. 2008) (orig. proceeding) (per curiam); *In re Tex. Dep't of Transp.*, 218 S.W.3d 74, 76 (Tex. 2007) (orig. proceeding). When a relator seeks to enforce a mandatory venue provision, the relator is not required to prove that it lacks an adequate appellate remedy and is only required to show that the trial court clearly abused its discretion by failing to transfer the case. *See In re Lopez*, 372 S.W.3d 174, 176 (Tex. 2012) (orig. proceeding) (per curiam); *In re Mo. Pac. R.R.*, 998 S.W.2d 212, 215–16 (Tex. 1999) (orig. proceeding). The only issue presented in such cases is the legal question regarding whether the trial court properly interpreted the mandatory venue provision. *In re Transcon. Realty Investors*, 271 S.W.3d at 270; *In re Tex. Ass'n of Sch. Bds., Inc.*, 169 S.W.3d 653, 656 (Tex. 2005) (orig. proceeding).

## III. STANDARD OF REVIEW

In an original proceeding regarding the application of mandatory venue, the

appellate court reviews the trial court's ruling on a motion to transfer for an abuse of discretion. *In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 117 (Tex. 2006) (orig. proceeding). A trial court has no discretion in determining what the law is or in applying the law to the facts. *See In re Mo. Pac. R.R. Co.*, 998 S.W.2d at 216. A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam); *In re Fort Bend County*, 278 S.W.3d 842, 843 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding). In reviewing a venue decision, the appellate court must conduct an independent review of the entire record, including the trial on the merits if applicable, to determine whether any probative evidence supports the trial court's venue decision. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(b); *Wilson v. Tex. Parks & Wildlife Dep't,* 886 S.W.2d 259, 261 (Tex.1994).

### IV. MOTION TO TRANSFER VENUE

Venue may be proper in more than one county under the general, mandatory, or permissive venue rules. *See GeoChem Tech Corp. v. Verseckes*, 962 S.W.2d 541, 544 (Tex. 1998). The plaintiff is given the first choice of the venue in which to file suit, but upon challenge by the defense, bears the burden to prove venue is maintainable in that county. TEX. R. CIV. P. 87(2)(a); *see GeoChem*, 962 S.W.2d at 544; *In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex. 1999) (orig. proceeding). The plaintiff may file suit in any permissible county or, in the case of mandatory venue provisions, in the county mandated by statute. *Wilson*, 886 S.W.2d at 260; *Kshatrya v. Tex. Workforce Comm'n &*

8

*Riddle Techs.*, 97 S.W.3d 825, 830 (Tex. App.—Dallas 2003, no pet.).

A defendant raises the question of proper venue by objecting to a plaintiff's venue choice through a motion to transfer venue. *See* TEX. R. CIV. P. 86. A defendant may move to transfer venue on grounds that mandatory venue lies in a different county. *Id.* 86(3)(b). A party must establish mandatory venue by prima facie proof. *Id.* 87(3)(c). If a plaintiff's chosen venue rests on a permissive venue statute and the defendant files a meritorious motion to transfer based on a mandatory venue provision, the trial court must grant the motion*. Wichita Cnty. v. Hart*, 917 S.W.2d 779, 781 (Tex. 1996); *Spin Doctor Golf, Inc. v. Paymentech, L.P.*, 296 S.W.3d 354, 357 (Tex. App.—Dallas 2009, pet. dism'd); *Morris v. Tex. Parks & Wildlife Dep't*, 226 S.W.3d 720, 723 (Tex. App.—Corpus Christi 2007, no pet.).

## V. ANALYSIS

Certain kinds of suits involving land must be filed in the county where all or part of the property is located:

> Actions for recovery of real property or an estate or interest in real property, for partition of real property, to remove encumbrances from the title to real property, for recovery of damages to real property, or to quiet title to real property shall be brought in the county in which all or part of the property is located.

TEX. CIV. PRAC. & REM. CODE ANN. § 15.011; *see In re Applied Chem. Magnesias Corp.*, 206 S.W.3d at 117. Moreover, if a mandatory venue provision applies to any claims or causes of action, then all claims and causes of action arising from the same transaction must be brought in the county of mandatory venue. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.004 (West 2002); *Airvantage, L.L.C. v. TBAN Props. # 1, L.T.D.*, 269 S.W.3d

9

254, 257 (Tex. App.—Dallas 2008, no pet.).

Two venue facts must be established to show that venue is mandatory under section 15.011: (1) that the nature of the suit fits within those listed in section 15.011; and (2) that all or part of the realty at issue is located in the county where venue is sought. *In re Lemons*, 281 S.W.3d 643, 646 (Tex. App.—Tyler 2009, orig. proceeding); *In re Stroud Oil Props., Inc.*, 110 S.W.3d 18, 25 (Tex. App.—Waco 2002, orig. proceeding). It is undisputed that the royalty interests at issue in this original proceeding derive from property located in La Salle County; thus, the sole issue herein is whether the suit falls within the parameters of section 15.011. In this regard, we first note that, while oil and gas leases are an interest in real property, *Yzaguirre v. KCS Res.*, 53 S.W.3d 368, 371 (Tex. 2001), accrued royalties are interests in personal property. *Id.* (citing *Tex. Oil & Gas Corp. v. Moore*, 630 S.W.2d 450, 452–53 (Tex. App.—Corpus Christi 1982, writ dism'd w.o.j.) ("[C]laims for past and accrued royalties are properly characterized as claims to recover personalty and, therefore, do not meet the requirements of the [predecessor to section 15.011].")).

The Texas Supreme Court has directed us to look to the "essence" of the dispute to determine whether it involves an interest in real property so as to invoke mandatory venue under the statute. *See In re Applied Chem. Magnesias Corp.*, 206 S.W.3d at 119. Accordingly, we consider whether the "substance of the dispute" falls within the scope of mandatory venue under the statute. *See Yzaguirre*, 53 S.W.3d at 371. Stated otherwise, we examine "the heart of the controversy" and "the controlling issue" in the case. *Renwar Oil Corp. v. Lancaster*, 154 Tex. 311, 276 S.W.2d 774, 776 (1955).

10

The "ultimate or dominant purpose" of a suit determines whether that particular suit falls under the mandatory venue statute and not "how the cause of action is described by the parties." *In re City Nat'l Bank*, 257 S.W.3d 452, 454 (Tex. App.—Tyler 2008, orig. proceeding) (citing *Bracewell v. Fair*, 638 S.W.2d 612, 615 (Tex. App.—Houston [1st Dist.] 1982, no writ)); *see Renwar Oil Corp.*, 276 S.W.2d at 776; *Yzaguirre*, 53 S.W.3d at 371. In construing a previous version of section 15.011, the Texas Supreme Court explained that the nature of the suit is determined from the facts alleged in the plaintiff's petition, the rights asserted, and the relief sought. *See Renwar Oil Corp.*, 276 S.W.2d at 775; *see also Airvantage L.L.C.*, 269 S.W.3d at 257 ("Whether the recovery is called conversion, breach of contract, or other non real property types of recovery, the true nature of the lawsuit depends on the facts alleged in the petition, the rights asserted, and the relief sought."). The Texas Supreme Court has explained that section 15.011 has been modified by the Legislature to include an additional reference to actions for an "interest" in real property, which "suggests that the Legislature intended section 15.011 to be more inclusive regarding the types of real property suits subject to mandatory venue." *In re Applied Chem. Magnesias Corp.*, 206 S.W.3d at 118.

In *Renwar Oil Corporation v. Lancaster*, the plaintiffs sought a declaratory judgment that they were entitled to receive a royalty payment under a mineral lease. 276 S.W.2d at 774–75. The plaintiffs disputed ownership of the royalty interests, or the extent of those interests, and sought a declaratory judgment fixing their royalties. *Id.* When the defendants sought to transfer venue, the plaintiffs argued that because the action was one for declaratory relief, the suit did not concern the recovery of an interest in land or to

11

quiet title to an interest in land. *Id.* The Texas Supreme Court disagreed, holding that when the trial court must resolve a boundary dispute, the suit is essentially one of the recovery for land and to quiet title even though cast as one for a declaratory judgment. *Id.* at 776. The royalty determination necessarily depended on resolving a dispute over the lease's boundaries. *Id.*

In *In re Applied Chemical*, the owner of land filed a declaratory judgment action seeking to clarify the "rights, status, and legal relations" of the parties under a letter agreement. *In re Applied Chem. Magnesias Corp.*, 206 S.W.3d at 117. The supreme court concluded that the "essence" of the dispute was whether Applied Chemical had a right to mine marble on Aggregate's land. *Id.* The court reasoned that, if it did, Applied Chemical had a mineral lease, which involves an interest in real property; and if it did not, then Applied Chemical did not have the right to mine marble from Aggregate's land and Aggregate would have a claim against Applied Chemical for damages to its property for the marble that was removed from its land. *Id.* The supreme court concluded that in both instances, the cases fell within the mandatory venue provision pertaining to land. *Id.*

In contrast, in *Yzaguirre*, in a dispute between royalty interest owners and the lessee of realty, the supreme court addressed whether the open-market price is still the correct measure for royalties payable under a lease when the lessee sold the gas for more than market value under a long-term sales contract. *Yzaguirr*e, 53 S.W.3d at 369. The supreme court concluded that the substance of the dispute concerned the obligations that the lessee owed to the royalty owners under the terms of the leases, rather than the

12

boundaries of the leases or the percentage of the royalty owners' royalties. *Id.* at 371. "Because the suit does not involve recovering real property or quieting title, the court of appeals correctly concluded that the mandatory venue provisions of the former version of section 15.011 do not apply." *Id.*

In the instant case, Rumley asserts that this is a dispute over the payment of money collected by B&B that is "only incidentally related to a mineral royalty interest through which B&B has been or is being paid money that rightfully belongs" to Rumley. In contrast, B&B asserts that the dispute is over an interest in property and points to the email from Rumley to B&B in which he states his belief that he is "entitled to 50% of the fee to the firm or 1/2 of the 1/32 [non-participating royalty interest]," and, inter alia, correspondence from Rumley's counsel notifying the lessee of the property, Swift Energy, of "a title dispute and pending litigation regarding a 1/32 nonparticipating royalty interest in 2,728.6 acres of land in La Salle County, Texas."

In the instant case, Rumley's live pleading does not expressly invoke issues regarding ownership of the disputed royalty interests. "Nevertheless, mandatory venue provisions may not be evaded merely by artful pleading." *In re Kerr*, 293 S.W.3d 353, 359 (Tex. App.—Beaumont 2009, orig. proceeding). The nature of the dispute, not the terms used to describe the action, focuses the venue determination. *See In re Applied Chem. Magnesias Corp.*, 206 S.W.3d at 119; *In re Kerr,* 293 S.W.3d at 359; *Madera Prod. Co. v. Atl. Richfield Co.*, 107 S.W.3d 652, 659 (Tex. App.—Texarkana 2003, pet. denied in part, dism'd in part). In other words, how the cause of action is described by the parties is not decisive. *See Airvantage, L.L.C.*, 269 S.W.3d at 258.

13

Looking at the essence or substance of this dispute, we conclude that the dispute is essentially over the rightful ownership of the nonparticipating royalty interest assigned to B&B. In so holding, we note that, according to Rumley, he had originally proposed that B&B execute an assignment of the nonparticipating royalty interest to him. Further, Rumley seeks not only a declaration or damages pertaining to accrued past royalties which would qualify as personalty excluded from the parameters of the mandatory venue statute, *see Yzaguirre*, 53 S.W.3d at 371, but also seeks a declaration or damages regarding future royalties. As stated in his live petition, the Hearn matter "has or shortly will result further in collection of money by B&B through the mineral royalty interest." Finally, we note that Rumley's counsel has notified the lessee of the land that there is a "title dispute" regarding the property. The resolution of Rumley's claim to monies generated by the Hearn matter depends on the rightful ownership of the royalty interest. Accordingly, the mandatory venue statute controls. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011.

## VI. CONCLUSION

Examining the facts alleged in Rumley's second amended petition, the rights asserted, and the relief sought, and considering the supreme court's analyses concerning mandatory venue regarding an interest in land, we conclude that this case falls within the parameters of section 15.011 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011. Accordingly, venue was mandatory in La Salle County. Thus, the trial court erred in denying B&B's motion to transfer venue of the case from Nueces County to La Salle County.

14

We conditionally grant the petition for writ of mandamus and direct the trial court to vacate its order denying the transfer of venue and to transfer venue of this matter to La Salle County. The writ will issue only if the trial court fails to comply. Given our disposition of this matter, B&B's motion for temporary emergency relief is dismissed as moot.

_____
GREGORY T. PERKES, JUSTICE

Delivered and filed the
23rd day of July, 2013.

15