NUMBER 13-07-00424-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


AUTO EXCEL LUBE CENTER, INC., Appellant,


v.
 


MIDSTATE ENVIRONMENTAL SERVICES, LLC, Appellee.

 


On appeal from the County Court at Law No. 2.


 of Nueces County, Texas.

 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Garza and Benavides


Memorandum Opinion by Chief Justice Valdez


 Appellant, Auto Excel Lube Center, Inc. ("Auto Excel"), appeals from a bench trial
judgment rendered in favor of appellee, Midstate Environmental Services, L.L.C.
("Midstate"). By three issues, Auto Excel contends that: (1) the trial court erred in denying
its motion to transfer venue; (2) the evidence is legally and factually insufficient to establish
contractual liability; and (3) the trial court abused its discretion in awarding attorney's fees. 
We affirm.

I. Background

 On January 6, 2003, Midstate, an environmental services company, contracted with
Auto Excel, an automotive oil-change center, to collect Auto Excel's used motor oil, oil
filters, and antifreeze. (1) The contract was executed in Forth Worth by Allon Sturges,
Midstate's northern division manager, and Tarek Wehbe, partial owner of Auto Excel. 
Under the contract's terms, Auto Excel would not be charged for the collection of used
motor oil. Auto Excel would be charged, however, for Midstate's collection of used oil filters
and antifreeze. The contract contains a handwritten phrase stating that "We [Midstate] will
supply two oil tanks for used oil for as long as we service this con[tract]." The contract
directs Auto Excel to remit payments to a post office box located in Corpus Christi, but it
states that Midstate's principal place of business is in Waco. Although it does not specify
a duration, the contract contains a termination provision which allows either party to
terminate the agreement after a thirty-day written notice. 

 By all accounts, the arrangement worked for both entities until February 2005. At
that time, Wehbe allegedly prevented Midstate employees from entering Auto Excel's
property to remove used oil because he had contracted with a different environmental
services company for the oil's removal. Midstate then tried to retrieve its tanks, which were
constructed at Midstate's expense for Auto Excel's use, but Wehbe denied access to
Midstate's employees.

A. Pleadings

 On May 24, 2005, Midstate sued Auto Excel for breach of contract, quantum meruit,
and conversion, and it asserted that venue was proper in Nueces County "pursuant to the
contract." Midstate sought economic damages and attorney's fees. On July 26, 2005,
Auto Excel answered by claiming that it had to contract with a different environmental
company because Midstate allegedly stopped collecting its used oil. Also on July 26, Auto
Excel moved to transfer venue to Tarrant County. On December 19, 2005, the trial court
signed a docket control order which set the case for trial on August 28, 2006. 

 On August 3, 2006, Auto Excel's counsel filed a "Motion to Withdraw and For
Continuance," which stated that he had become extremely ill and could not continue to
represent Auto Excel. The trial court granted Auto Excel's motion on August 24, and it
issued a new docket control order on August 28, which set September 16, 2006, as the
new trial date. (2) On November 7, 2006, the trial court held a hearing on Auto Excel's motion
to transfer venue. After receiving a post-hearing brief from Auto-Excel, the trial court
denied the motion to transfer. A bench trial commenced on February 5, 2007.

B. Testimony

 Sturges testified that Midstate processes used motor oil into number five diesel fuel,
which is burned to heat asphalt during road construction, and it sells the fuel to paving
companies. Midstate would contract with service stations to either purchase or procure for
free used motor oil. Wehbe, on behalf of Auto Excel, entered into an "oil-for-free" contract
with Midstate. Sturges testified that Midstate, at its own expense, purchased two metal
tanks to hold Auto Excel's used oil in between the bi-monthly pickups. Sturges then wrote
on the contract that "We [Midstate] will supply two oil tanks for used oil for as long as we
service this con[tract]." After the tanks were installed, a driver from Midstate's Dallas office
made bi-monthly pickups of Auto Excel's used oil. According to Sturges, the Auto Excel
contract worked fine until Wehbe refused to allow Midstate to pickup used oil and chased
Midstate employees off of Auto Excel's property. Struges further testified that there were
three unsuccessful attempts to retrieve Midstate's tanks but that Wehbe continued to
chase Midstate employees off of Auto Excel's property.

 Regarding the cost of the tanks and Midstate's principal place of business, the
record contains an invoice showing that Midstate paid $2,434 for two fabricated tanks. The
invoice was addressed to a post office box that Midstate rented in Corpus Christi. Sturges
testified that Midstate collects used oil throughout Texas, has offices in Waco, Dallas, and
Corpus Christi, and has its home office in Robstown.

 Joe Hendrick, partial owner of Midstate, testified as to Midstate's principal place of
business and lost profits. Hendrick testified that he worked out of Robstown. Hendrick
also testified that Midstate paid $750 to transport the tanks from Corpus Christi to Fort
Worth, $200 to paint them, and $150 to hire a wrecker to install them. Although the tanks
cost $2,434 to construct, Hendrick testified that he believed them to be worth $3,500 a
piece because of their good condition and the current market for tanks. Hendrick further
testified that he had not heard any complaints from Auto Excel about the timing or quality
of Midstate's pickups, and Midstate had never received a thirty-day written termination
notice from Auto Excel. According to Hendrick, during the period from June 2003 to
February 2005, when the contract worked smoothly, Midstate picked up an average of 907
gallons of used oil from Auto Excel on a monthly basis. Hendrick also testified that
Midstate's average profit per gallon of used oil is nineteen cents. Hendrick then calculated
that 907 gallons multiplied by twenty-three months, which represented the number of
months between March 2005 and January 2007, equaled 20,861 gallons of withheld oil. 
Multiplying 20,861 gallons by an average profit of nineteen cents, Hendrick concluded that
Midstate's lost profits totaled $3,546.37.

 Paul Dodson, one of Midstate's attorneys, testified as to attorney's fees. Dodson
testified that Midstate had paid his firm $10,947.50 for pre-trial legal services. He
estimated that the total bill for a full trial would be approximately $15,747.50, excluding
paralegal time. Dodson further testified that attorney's fees for an appeal to the court of
appeals would be $10,000, a petition for review to the supreme court would be $7,000, and
a brief on the merits before the supreme court would be $10,000. Dodson further testified
that he was familiar with the rules of professional conduct and his fee estimates were in
accordance with those rules. After Dodson testified, Midstate moved to admit a timesheet 
and several invoices that Dodson's firm had submitted to Midstate for payment. Auto Excel
objected on the grounds that the timesheet could not be relied on for the truth of the matter
asserted and that no proper foundation had been established. The trial court admitted the
timesheet and invoices over Auto Excel's objections. 

 Wehbe testified that Midstate fell woefully behind in its pickups, and he was forced
to contract with a different environmental services company because Midstate's sporadic
service disrupted Auto Excel's business. Wehbe testified that he had an agreement with
Sturges that used oil would be picked up on a weekly basis and that Midstate complied at
the beginning of the agreement. Wehbe alleged that in 2004, Midstate began picking up
oil at sporadic intervals and that he had to use his own oil barrels to handle the overflow. 
Wehbe claimed that he was forced to redirect Auto Excel employees's time to moving and
storing the oil that Midstate should have picked up and that this slowed his ability to service
customers. He testified that he informed Sturges of the problem but to no avail. By 2005,
Wehbe thought Midstate had abandoned the contract; therefore, he contracted with a
different company.

C. Judgment

 The trial court rendered a judgment against Auto Excel for $3,547,37 in lost profits,
$7,000 for the tanks, $15,747.50 for attorney's fees for trial, $10,000 for attorney's fees on
an appeal, $7,000 for attorney's fees for a petition for review to the supreme court, $10,000
for attorney's fees for a brief on the merits before the supreme court, court costs, and pre-and-post judgment interest. The judgment provided that the $7,000 for the tanks could be 
satisfied if Auto Excel returned the tanks to Midstate. The trial court also issued findings
of fact and conclusions of law. This appeal ensued.

II. Venue

 By its first issue, Auto Excel contends that the trial court erred in denying its motion
to transfer venue because there is no evidence to establish venue in Nueces County. 
Specifically, Auto Excel argues that its contractual obligation to remit payments to
Midstate's Corpus Christi post office box does not satisfy the performance requirement
under section 15.035 of the civil practice and remedies code in light of the contrary
evidence. See Tex. Civ. Prac. & Rem. Code Ann. § 15.035 (Vernon 2002). Midstate
responds by arguing that the remittance provision is sufficient. Even if the remittance
provision were insufficient, Midstate argues, Auto Excel waived any venue complaint by
filing motions to withdraw and for continuance that were not subject to its motion to transfer
venue and by not setting a hearing on its July 2005 venue motion until November 2006.

A. Standard of Review

 An appellate court reviews a trial court's denial of a motion to transfer venue de
novo. Wilson v. Tex. Parks & Wildlife Dep't, 886 S.W.2d 259, 260-62 (Tex. 1994). We,
therefore, conduct an independent review of the entire record. Tex. Civ. Prac. & Rem.
Code Ann. § 15.064(b) (Vernon 2002); Wilson, 886 S.W.2d at 260-62. If there is any
probative evidence in the record demonstrating venue was proper in the county where
judgment was rendered, we must uphold the trial court's ruling. See Bonham State Bank
v. Beadle, 907 S.W.2d 465, 471 (Tex. 1995); Morris v. Tex. Parks & Wildlife Dep't, 226
S.W.3d 720, 723 (Tex. App.-Corpus Christi 2007, no pet.).

B. Applicable Law


 Section 15.035(a) provides that:


Except as provided by Subsection (b), if a person has contracted in writing
to perform an obligation in a particular county, expressly naming the county
or a definite place in that county by that writing, suit on or by reason of the
obligation may be brought against him either in that county or in the county
in which the defendant has his domicile.


Tex. Civ. Prac. & Rem. Code Ann. § 15.035(a). Venue is proper under section 15.035(a)
of the civil practice and remedies code in the county where a contract specifies
performance, which includes payment for services rendered. See id; see also Roach v.
Schaefer, 214 S.W.2d 128, 130 (Tex. Civ. App.-Fort Worth 1948, no writ) (providing that
venue is proper in the county where insurance premiums were to be paid).

C. Analysis

 In the instant case, the trial court did not issue factual findings regarding its decision
to deny Auto Excel's venue motion. Nonetheless, there is probative evidence to support
the trial court's order. See Wilson, 886 S.W.2d at 262. The contract required Auto Excel
to pay Midstate in Corpus Christi. Sturges and Hendrick testified that both parties abided
by the contract for approximately 21 months, then Auto Excel suddenly refused to allow
Midstate's trucks onto its property. Auto Excel's argument that the contract fixes Midstate's
principal place of business in Waco is beside the point because performance occurred in
Nueces County. See Roach, 214 S.W.2d at 130. Moreover, we are not allowed to accept
Auto Excel's invitation to engage in a factual sufficiency review of the evidence supporting
the trial court's venue decision. See Ruiz v. Conoco, 868 S.W.2d 752, 758 (Tex. 1993). 
Auto Excel's first issue is overruled.

III. Legal and Factual Sufficiency

 By its second issue, Auto Excel argues that the evidence is legally and factually
insufficient to support a finding that a valid contract existed between the parties because
there was no "mutual obligation." (3) 

A. Standard of Review

 At the conclusion of the bench trial, the court issued findings of fact, which have the
same force and effect as a jury's verdict. Gregory v. Sunbelt Sav., F.S.B., 835 S.W.2d
155, 158 (Tex. App.-Dallas 1992, writ denied). When we review for legal sufficiency, we
review the record to determine if there is evidence to support the finding, crediting
favorable evidence if reasonable jurors could and disregarding contrary evidence unless
reasonable jurors could not. City of Keller v. Wilson, 168 S.W.3d 802, 811 (Tex. 2005).
When the plaintiff bears the burden of proof at trial and receives a negative finding, we will
only reverse that finding for legal insufficiency if the plaintiff on appeal conclusively
establishes the opposite of the finding. Id. 

 When reviewing factual sufficiency points, we do not merely substitute our opinion
with that of the trial court; rather, we "consider and weigh all of the evidence and will set
aside the verdict only if the evidence is so weak or the finding so against the great weight
and preponderance of the evidence that it is clearly wrong and unjust." Id. at 826.

 We review the conclusions of law de novo. State v. Heal, 917 S.W.2d 6, 9 (Tex.
1996). Under a de novo review, we exercise our own judgment and redetermine each legal
issue. Quick v. City of Austin, 7 S.W.3d 109, 116 (Tex. 1999). A conclusion will be upheld
on appeal if the judgment can be sustained on any legal theory supported by the evidence.
BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).

B. Applicable Law

 A contract must be based upon a valid consideration, or in other words, mutuality
of obligation. See Tex. Gas Util. Co. v. Barrett, 460 S.W.2d 409, 412 (Tex. 1970); Langley
v. Norris, 173 S.W.2d 454, 458 (Tex. 1943); Tex. Farm Bureau Cotton Ass'n v. Stovall, 113
Tex. 273, 253 S.W. 1101, 1105 (Tex. 1923). Consideration is a bargained for exchange
of promises. Roark v. Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 496 (Tex. 1991). 
Consideration consists of benefits and detriments to the contracting parties. Id. The
detriments must induce the parties to make the promises and the promises must induce
the parties to incur the detriments. Id. A contract that lacks consideration lacks mutuality
of obligation and is unenforceable. See Tex. Farm Bureau, 253 S.W. at 1105.

C. Analysis

 The trial court's first finding states: "[Midstate] and [Auto Excel] entered into a valid
contract on January 6, 2003 . . . ." As consideration for its part of the bargain, Midstate
provided Auto Excel with two tanks, each of which cost $2,434 to construct, and promised
to pick up used motor oil from Auto Excel's facility. Auto Excel, in return, got free disposal
of its used motor oil, a commodity that, at the time, it chose not to sell. Thus, there is
legally and factually sufficient evidence to support benefits and detriments to both parties. 
See Roark, 813 S.W.2d at 496. Auto Excel's second issue is overruled.

IV. Attorney's Fees

 By its third issue, Auto Excel contends that the evidence is legally and factual
insufficient to support an award of attorney's fees. Reasonable attorney's fees are
recoverable in a suit for breach of contract. See Tex. Civ. Prac. & Rem. Code Ann. §
38.001(8) (Vernon 1997). The determination of reasonable attorney's fees is a question
for the trier of fact. Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 12 (Tex. 1991). The
amount of a fee award rests in the sound discretion of the trial court, and its judgment will
not be reversed on appeal absent a clear abuse of discretion. Alford v. Johnston, 224
S.W.3d 291, 298 (Tex. App.-El Paso 2005, pet. denied). 

 Courts are to consider the following factors when determining the amount of
reasonable attorney's fees: (1) the time and labor required, novelty, and difficulty of the
question presented and the skill required to properly perform the legal service; (2) the
likelihood that the acceptance of employment precluded other employment by the lawyer;
(3) the fee customarily charged in the locality for similar services; (4) the amount involved
and the results obtained; (5) the time limitations imposed by the client or by the
circumstances; (6) the nature and length of the professional relationship with the client; (7)
the experience, reputation, and ability of the lawyer performing the services; and (8)
whether the fee is fixed or contingent. See Arthur Andersen & Co. v. Perry Equip. Corp.,
945 S.W.2d 812, 818 (Tex. 1997). When making this inquiry, courts are free to look at the
entire record, the evidence presented on reasonableness, the amount in controversy, the
common knowledge of the participants as lawyers and judges, and the relative success of
the parties. Garrod Invs., Inc. v. Schlegel, 139 S.W.3d 759, 767 (Tex. App.-Corpus Christi
2004, no pet.). 

 In the instant case, the invoices that the trial court admitted reveal that Van
Huseman, a Midstate attorney, was the primary attorney responsible for Midstate's
prosecution of the underlying suit and that he charged $300 per hour for his services. The
monthly invoices show that Huseman's firm billed the following amounts to Midstate:

Month Amount Billed

July 2005 $706.04

August 2005 $799.81

September 2005 $492.11

November 2005 $633.67

January 2006 $159.91

February 2006 $357.19

March 2006 $307.41

June 2006 $503.19

July 2006 $433.80

August 2006 $772.87

September 2006 $1,439.75

October 2006 $2,051.00

November 2006 $719.75

December 2006 $1,835.00

January 2007 $434.10


The invoice bill included paralegal time and expenses, which amounted to $11,645.60. 
Dodson testified that Midstate had already paid the firm $10,947.50 for pre-trial legal
services, and he estimated that the total bill for a full trial would been approximately
$15,747.50. Dodson also provided estimates for future legal services, should they be
required. Based upon the extensive record before us, we cannot say that Auto Excel's
third issue has any merit because there is factually and legally sufficient evidence
supporting the judgment. Accordingly, Auto Excel's third issue is overruled.

V. Conclusion

 The trial court's judgment is affirmed.

 

 _______________________

 ROGELIO VALDEZ

 Chief Justice


Memorandum Opinion delivered and

filed this the 25th day of August, 2008.
1. Midstate would process the used motor oil into a heating fuel, sell it for a profit, and dispose of the
filters and antifreeze in a lawful manner. 
2. No trial occurred on September 16, and the record does not contain a continuance as to the
September 16 trial setting. 
3. We note that parts of Auto Excel's brief argue that Midstate committed a prior material breach of
the contract, and therefore, mitigation was necessary. These arguments, however, are not supported by legal
authority or cogent analysis. See Tex. R. App. P. 38.1(h). Therefore, they are not properly before us, and we
will address the only argument in issue two that complies with our basic briefing requirements.