**Affirmed and Opinion filed March 27, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00353-CV

**MAYOR ANNISE PARKER, IN HER OFFICIAL CAPACITY, AS MAYOR OF THE CITY OF HOUSTON, Appellant**

**V.**

**AFEWORK HUNEGNAW, Appellee**

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2010-39565**

## O P I N I O N

In this interlocutory appeal, Mayor Annise Parker, in her Official Capacity, as Mayor of the City of Houston, appeals an order denying her plea to the jurisdiction in appellee, Afework Hunegnaw's, suit to "quiet title" regarding certain real property. We affirm.

### I. BACKGROUND

According to the allegations in Hunegnaw's live petition, during pertinent times,

he travelled abroad for extensive periods. In 2003, he executed a "Durable General Power of Attorney," appointing Charles A. Herbert as Hunegnaw's "Attorney-in-Fact" and vesting Herbert with

> full power to do any and every act and exercise any and every power that I might or could do or exercise through any other person and that my Attorney-in-Fact, in such Attorney-in-Fact's discretion, shall deem proper and advisable, intending hereby to vest in my Attorney-in-Fact a full and universal power of attorney, and not by way of limitation but as illustration, and including, but not limited to the following described real property:

> 7404 Scott Street Houston, Texas 77021

> and more particularly described as:

> TRS 36F & 36G (001 *TR 63B) INSTITITE PLACE-GLADITCH

> with full power to [among other listed acts]:

> . . . sell, exchange, convey with or without covenants . . . or otherwise dispose of an estate or interest in real property or a right incident to real property . . .

Hunegnaw also gave Herbert a rubber stamp of Hunegnaw's signature. In 2004, Herbert caused Hunegnaw to transfer certain lots of real property referred to as 36A, 36B, 36F, 36G, and 36H to Treasa Antony via general warranty deeds executed using Hunegnaw's rubber-stamped signature. In 2008, Antony sold Lots 36A, 36B, and 36H (hereinafter "the property") to the City of Houston ("the City") and effected this transfer via a general warranty deed.

Hunegnaw alleges that the transfers to Antony were unauthorized, unlawful, and fraudulent because Herbert's authority under the power of attorney relative to disposition of real property was limited to Lots 36F and 36G and any transfers effected with Hunegnaw's rubber-stamped signature constituted forgeries; therefore, the deed that Antony subsequently executed "[f]ailed to transfer true title" to the City. Hunegnaw further alleges that he first discovered these transactions after they occurred and he received no consideration from any of the transactions.

Hunegnaw sued various parties involved in these transactions, including Herbert, Herbert's law firm, Antony, the notary of Hunegnaw's rubber-stamped signature on the

deeds transferring the property to Antony, and the City. Hunegnaw eventually omitted the City, named its sitting mayor, Parker, as a defendant, and also sued the Texas Land Commissioner.

In his live pleading (the sixth amended petition), Hunegnaw's only cause of action against Parker is a "Claim of Quiet Title."[1] Hunegnaw alleges Parker is "wrongfully withholding . . . possession" of Hunegnaw's property as a City official asserting a claim that the City holds title. Hunegnaw seeks declarations that the deeds purportedly transferring title to Antony and subsequently to the City are void and an injunction precluding Parker from continuing to possess the property. Hunegnaw asserts that "the land itself" is the only remedy he seeks against Parker, although he requests monetary damages from other defendants.

Parker filed a plea to the jurisdiction ("the plea"), contending the claim is barred by governmental immunity. Hunegnaw filed a response to the plea and a "Motion for Evidentiary Hearing In Lieu Of Hearing On Mayor Parker's Plea To The Jurisdiction," requesting the trial court to abate or deny the plea pending an "evidentiary hearing" on the merits of the title dispute. The trial court conducted a hearing on the plea, but there is no reporter's record of the hearing. On April 5, 2011, the trial court signed an order denying the plea. Parker then filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2011); *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840–46 (Tex. 2007).

## II. ANALYSIS

### A. Preliminary Matters

To resolve Parker's appellate challenge to the order denying her plea, we initially clarify several matters regarding the nature of Hunegnaw's claim.

---

[1] Hereinafter, all references to Hunegnaw's "action" or "claim" mean the cause of action against Parker because it is the only cause of action that is the subject of this appeal.

3

First, in Hunegnaw's live petition, he names Parker as a defendant in both her official and individual capacities; but in the previous petition, he named Parker in only her official capacity. However, there were no changes in the body of the live petition relative to Parker's alleged status. Substantively, Hunegnaw alleges a claim against Parker in only her official capacity; he alleges that Parker wrongfully possesses the property under a claim that the City holds title, and he does not complain of any acts committed by Parker on her own behalf or seek monetary damages. *See State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980) (stating that court considers substance of pleading, not merely form of its title, to determine nature of plea for relief).

Second, the term "suit to quiet title" has been used broadly in reference to legal disputes regarding (1) title to, and possession of, real property—a trespass-to-try-title action, and (2) validity of other "clouds" which indirectly have an adverse effect on an undisputed owner's title to real property. *Mortg. Elec. Registration Sys., Inc. v. Groves*, No. 14-10-00090-CV, 2011 WL 1364070, at *3 (Tex. App.—Houston [14th Dist.] Apr. 12, 2011, pet. denied) (mem. op.). A trespass-to-try-title action is the method for determining title to lands, tenements, or other real property and the exclusive remedy for resolving competing claims to property. Tex. Prop. Code Ann. § 22.001 (West 2000); *Groves*, 2011 WL 1364070, at *3. Hunegnaw effectively alleges a trespass-to-try-title action because this is not a situation in which his title is undisputed and he seeks only to remove a cloud created by the City on that title. Instead, this dispute involves competing claims by Hunegnaw and the City of title to the property.[2]

Third, for purposes of resolving the jurisdictional challenge, the underlying nature of Hunegnaw's action as trespass to try title is not altered by the fact that he requests declaratory and injunctive relief. *See Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354

---

[2] As discussed below, our disposition of the jurisdictional issue is unaffected by whether Hunegnaw's claim should more specifically be denominated a "trespass-to-try-title" action. Nonetheless, Parker suggests that principles relied on by Hunegnaw to support jurisdiction apply only to an action against an official to remove a cloud asserted by a governmental entity on a plaintiff's undisputed title, as opposed to a situation involving competing claims of title by the plaintiff and a governmental entity. Thus, we will properly refer to Hunegnaw's claim as " trespass-to-try-title" based on its substance.

4

S.W.3d 384, 388 (Tex. 2011) (recognizing declaratory-judgments act does not alter trial court's jurisdiction or underlying nature of claim but is merely procedural device for deciding cases already within court's jurisdiction). By requesting declarations that the transfers from Hunegnaw to Antony and subsequently to the City are void and an injunction precluding Parker from possessing the property, Hunegnaw effectively seeks adjudication of the title dispute in his favor. *See id.* at 388–90 (evaluating plea to jurisdiction on suit as trespass-to-try-title action based on nature of dispute—rival claims to ownership of property—despite plaintiff's pleading declaratory-judgment action).

Accordingly, we will determine whether the trial court erred by denying Parker's plea on Hunegnaw's trespass-to-try-title action against Parker in her official capacity.[3]

## B. Parker's Plea

In her plea and on appeal, Parker contends the trial court lacks subject matter jurisdiction over Hunegnaw's claim under the doctrine of governmental immunity. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004) (recognizing contention that sovereign immunity deprives court of subject matter jurisdiction may be raised through plea to the jurisdiction). Sovereign immunity deprives a trial court of subject matter jurisdiction over claims against the State or a state agency unless the Legislature has consented to suit. *See id.* at 224. In a suit against a governmental entity, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *See Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). A home-rule city, such as Houston, has the same governmental immunity in performance of its governmental functions as the sovereign immunity

---

[3] Parker filed her plea between Hunegnaw's fifth and sixth amended petitions. Substantively, in the sixth amended petition, Hunegnaw did not add any claims against Parker or factual allegations altering the nature of the existing claim; in fact, Hunegnaw clarified that he does not seek monetary damages against Parker—a remedy she challenged in her plea. Therefore, we will review the plea as applicable to this live petition. *See Morris v. Tex. Parks & Wildlife Dep't*, 226 S.W.3d 720, 727 n.6 (Tex. App.—Corpus Christi 2007, no pet.) (reviewing plea to jurisdiction against plaintiff's subsequently amended petition because issues raised in plea were inclusive of allegations in amended petition).

5

enjoyed by the State unless the city's immunity is limited by statute. *See City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007); *see also Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003) (stating, although courts often use terms "sovereign immunity" and "governmental immunity" interchangeably, sovereign immunity refers to State's immunity from suit and liability, in addition to protecting its various divisions of state government, including agencies, boards, hospitals, and universities, whereas governmental immunity protects political subdivisions of the State, including counties, cities, and school districts).

Parker argues she is entitled to the same governmental immunity enjoyed by the City. She cites authority holding that a suit against a government officer in her official capacity "'is, in all respects other than name . . . a suit against the entity'" of which the official is an agent and the official has the same immunity enjoyed by the entity unless she has acted *ultra vires*. *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 401 (Tex. 2011) (quoting *Koseoglu*, 233 S.W.3d at 844 and citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 380 (Tex. 2009)). To satisfy this *ultra vires* exception, a plaintiff "must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *See Heinrich*, 284 S.W.3d at 372. Although suit against the governmental entity is barred by immunity, a successful claimant in an *ultra vires* suit against a government official may obtain prospective declaratory or injunctive relief, but it may not recover retrospective relief, such as monetary damages. *Id.* at 373–76.

Based on these principles, Parker contends Hunegnaw's claim against Parker is effectively a suit against the City, which is barred by governmental immunity, because Hunegnaw does not allege any waiver of immunity or allege that Parker acted without legal authority or failed to perform a purely ministerial act as required to satisfy the *ultra vires* exception. Accordingly, in her plea, Parker challenged Hunegnaw's pleadings. When a plea to the jurisdiction challenges the plaintiff's pleadings, the trial court must

determine if the plaintiff alleges facts that affirmatively demonstrate the court's jurisdiction. *Miranda*, 133 S.W.3d at 226. Whether the plaintiff has met this burden is a question of law that we review *de novo*. *Id.* We construe the pleadings liberally in favor of the plaintiff, consider the pleader's intent, and accept as true the factual allegations in the pleadings. *Id.*

## C.  Hunegnaw's Jurisdictional Contention—*State v. Lain*

In Hunegnaw's live petition, he relies on *State v. Lain*, 349 S.W.2d 579 (Tex. 1961), to support the trial court's jurisdiction over his claim. In fact, the trial court made the following handwritten notation on its order denying Parker's plea: "See Lain [citation]" and another case, *Fleming v. Patterson*, 310 S.W.3d 65 (Tex. App.—Corpus Christi 2010, pet. struck), in which the court applied *Lain*.

In *Lain*, the plaintiffs brought a trespass-to-try-title suit against the State of Texas and various state officials and employees (collectively "the officials"), complaining that the defendants constructed a ferry landing and dredged a channel over the plaintiffs' submerged land and seeking to enjoin the defendants' operation of ferries over this land. 349 S.W.2d at 580. The property was undisputedly owned by the plaintiffs, but the defendants claimed the plaintiffs' title was subject to certain public rights. *Id.* at 581. The trial court dismissed the claims against the State pursuant to its plea to the jurisdiction and denied the pleas to the jurisdiction filed by the officials. *Id.* at 580. Subsequently, the trial court rendered summary judgment on the merits in favor of the plaintiffs, awarding them title and possession and enjoining operation of the ferries. *Id.* On appeal, the officials contended, among other grounds, that the claims against them constituted claims against the State; thus, they were entitled to sovereign immunity because there was no legislative consent to sue. *Id.*

The Supreme Court of Texas held that legislative consent was not prerequisite to maintaining suit against the officials:

> When suit for recovery of title to and possession of land, filed without
> legislative consent, is not against the state itself, but is against individuals

7

only, the mere assertion by pleading that the defendants claim title or right of possession as officials of the state and on behalf of the state, will not bar prosecution of the suit.

. . .

One who takes possession of another's land without legal right is no less a trespasser because he is a state official or employee, and the owner should not be required to obtain legislative consent to institute suit to oust him simply because he asserts a good faith but overzealous claim that title or right of possession is in the state and that he is acting for and on behalf of the state.

*Id.* at 581.

The court cited "well-reasoned and authoritative" decisions of the United States Supreme Court supporting the conclusion that a plea of sovereign immunity by governmental officials will not be sustained in a suit by the owner of land with right of possession when the governmental entity has neither title nor right of possession. *Id.* at 581–82 (citing *United States v. Lee*, 106 U.S. 196 (1882); *Stanley v. Schwalby*, 19 S.W. 264 (1892), rev'd on other grounds, 147 U.S. 508 (1893); *Imperial Sugar Co. v. Cabell*, 179 S.W. 83 (Tex. Civ. App.—Galveston 1915, no writ); *Whatley v. Patten*, 31 S.W. 60 (Tex. Civ. App.—Galveston 1895, writ ref'd)). The *Lain* court further explained the rationale for this rule: possession is not held for the sovereign but is "wrongfully held." *Id.* at 582.

The *Lain* court then outlined the procedures applicable in such a suit based on the above-cited rationale:

When in this state the sovereign is made a party defendant to a suit for land, without legislative consent, its plea to the jurisdiction of the court based on sovereign immunity should be sustained in limine. But . . . when officials of the state are the only defendants, or the only remaining defendants, and they file a plea to the jurisdiction based on sovereign immunity, it is the duty of the court to hear evidence on the issue of title and right of possession and to delay action on the plea until the evidence is in. If the plaintiff fails to establish his title and right of possession, a take nothing judgment should be entered against him as in other trespass to try title cases. If the evidence establishes superior title and right of possession in the sovereign, the officials are rightfully in possession of the sovereign's

8

land as agents of the sovereign and their plea to the jurisdiction based on sovereign immunity should be sustained. If, on the other hand, the evidence establishes superior title and right of possession in the plaintiff, possession by officials of the sovereign is wrongful and the plaintiff is entitled to relief. In that event the plea to the jurisdiction based on sovereign immunity should be overruled and appropriate relief should be awarded against those in possession. That those wrongfully claiming title or the right of possession are sued in their official capacities as well as individually cannot alter the rule.

*Id.* Applying these procedures, the court addressed the merits of the plaintiffs' claim, held that their title was not subject to public rights, and affirmed summary judgment in their favor. *Id.* at 582–86.

As Hunegnaw suggests, the *Lain* court clearly distinguished a suit against a governmental entity, which is barred by sovereign immunity, from a suit against an official of the governmental entity, for which resolution of the jurisdictional issue depends on the merits of the claim. *See id.* at 581–82. Therefore, Hunegnaw contends he is not required to plead a waiver of immunity or an *ultra vires* action; rather, he pleads allegations supporting jurisdiction by suing a governmental official for wrongful possession of Hunegnaw's property, and the trial court may not grant Parker's plea unless the court hears evidence and Parker proves the City holds superior title.

## D. Application of *Lain* to the Present Case

In her plea, Parker suggested that the *Lain* holdings relative to suits against governmental officials are no longer viable or are inapplicable to the present case because the holdings were limited to the particular facts of *Lain*.[4] In her two appellate issues, Parker reiterates this argument, thus contending the trial court erred by denying her plea based on Hunegnaw's pleadings. However, on appeal, Parker also intersperses with the above-cited arguments a suggestion that *Lain* remains viable and is applicable to the

---

[4] Parker suggests *Lain* remains viable only to the extent that the court held "a suit for land" against a governmental entity is barred by sovereign immunity. Thus, the issue in the present case is whether *Lain* remains viable in such a suit against a governmental official.

9

present case but she did prove the City's superior title. We will consider separately these arguments, which we construe as alternative positions.

### 1. Viability and Applicability of *Lain*

Parker suggests *Lain* is no longer viable because it conflicts with the more general jurisdictional principles subsequently announced by the supreme court, as cited above, that a suit against an official in her official capacity is effectively a suit against the governmental entity, which is barred by immunity unless the official has acted *ultra vires*.

However, after appellate briefing in the present case, the supreme court confirmed the continued viability of *Lain* in suits against governmental officials. In *Sawyer Trust*, the plaintiff sued the Texas Parks and Wildlife Department seeking, among other relief, a declaratory judgment that a stream across the plaintiff's property was not navigable water, whereas the State of Texas claimed the stream was navigable water. 354 S.W.3d at 386–87. The State owns the soil under navigable streams, and the Department regulates removal of sand and gravel from state-owned waters and beds; the plaintiff wished to sell sand and gravel from the streambed without the Department's interference. *Id.* The trial court denied the Department's plea to the jurisdiction in which it alleged, among other grounds, the plaintiff had not pleaded a claim that fell within a waiver of sovereign immunity. *Id.*

After concluding the plaintiff's request for declaratory relief was in essence a trespass-to-try-title action, the supreme court held that the request was barred by sovereign immunity because there was no legislative consent to suit. *See id.* at 388–90 (citing *Lain*, 349 S.W.2d at 582). However, the plaintiff requested the court to remand for the plaintiff to add state officials as parties if the court determined the claims against the Department were barred by sovereign immunity. *Id.* at 393. When agreeing to this request, the court reiterated the *Lain* holding that a trespass-to-try-title suit against the State is barred by sovereign immunity but "in some instances a party may maintain a

10

trespass to try title action against governmental officials acting in their official capacities." *Id.* (citing *Lain*, 349 S.W.2d at 581).

Some sister courts of appeals had previously applied *Lain* as precedent despite expressing that "'[s]ome of [its] conceptual underpinnings . . . are not easily reconciled with contemporary Texas sovereign immunity jurisprudence.'" *See Fleming*, 310 S.W.3d at 70 (quoting *State v. BP Am. Prod. Co.*, 290 S.W.3d 345, 356–57 (Tex. App.—Austin 2009, pet. denied)). However, the *Sawyer Trust* court actually analogized the *Lain* holding to the *ultra vires* exception more recently defined in *Heinrich*. *See Sawyer Trust*, 354 S.W.3d at 393. Specifically, the *Sawyer Trust* court included its discussion of *Lain* under a section entitled "Ultra Vires Claim." *Id.* The court cited *Heinrich* when explaining that an official possessing a plaintiff's property under an incorrect claim that the governmental entity holds title *is* acting without legal authority; thus, the plaintiff's suit to recover possession is essentially a suit to compel the official to act within her statutory or constitutional authority and the official's claim that title or possession "is on behalf of" the entity will not bar the suit. *See id.* (citing *Heinrich*, 284 S.W.3d at 370–74; *Lain*, 349 S.W.2d at 581–83).

The court then reiterated the procedures set forth in *Lain* for resolution of a plea to the jurisdiction in a trespass-to-try-title action against a governmental official. *Id.* at 394 (citing *Lain*, 349 S.W.2d at 582). The court found "no good reason that the process and principles we set out long ago in *Lain* should not apply" to the dispute regarding whether the stream on the plaintiff's property was navigable water and thus owned by the State. *Id.* The court remanded so that the plaintiff could exercise the opportunity to amend its pleading and sue appropriate governmental officials. *Id.* Accordingly, based on *Sawyer Trust*, *Lain* remains binding precedent. *See id.* at 393–94.

Parker also suggests that *Lain* is inapplicable to the present case even if it remains viable in some circumstances because the *Lain* holding was limited to its particular facts, which are distinguishable from Hunegnaw's factual allegations. Parker notes that the *Lain* plaintiffs undisputedly held title to the property at issue and sued the state officials

11

merely to prevent their trespass via using the property for the public right; thus, the plaintiffs' action against the officials did not involve adjudication of any claim involving the State. In contrast, the present case involves rival claims of title asserted by Hunegnaw and the City. In an apparently interrelated argument, Parker contends that a judgment against her would not bind the City. Parker apparently advances these arguments to again support the proposition that Hunegnaw's claim is barred by governmental immunity because he essentially seeks to adjudicate a claim against the City and bind the City to his requested relief.

The *Sawyer Trust* court did not directly address these contentions. *See* 354 S.W.3d 384. However, the court implicitly rejected the contention that *Lain* applies only when the plaintiff undisputedly holds title to the property and the State merely claims a right of use or occupancy because (1) *Sawyer Trust* involved rival claims of *ownership* to the streambed by the plaintiff and the State, *see id.* at 386–94, and (2) the court reiterated that *Lain* applies when the official claims "*title* or possession" on behalf of the governmental entity. *See id.* at 393 (emphasis added); *see also BP Am.*, 290 S.W.3d at 354, 357–58 (rejecting direct contention that *Lain* applies only to "cases, like *Lain*, where the plaintiff claims title to property and the State does not" and asserts only rights of use and occupancy because the *Lain* court expressed its rationale applies when the official asserts the State's "'*title* or right of possession'" and trial court must hear evidence on "'issue of title and right of possession'").

Further, by holding that *Lain* applies even when an official claims "title or possession" on behalf of the governmental entity, the *Sawyer Trust* court implicitly rejected the suggestion that a trespass-to-try-title suit against an official is barred by immunity because the plaintiff essentially seeks relief binding the governmental entity— not the official. *See Sawyer Trust*, 354 S.W.3d at 393. Moreover, the court implicitly rejected this suggestion by analogizing a trespass-to-try-title action against an official to an *ultra vires* suit. *See id.* at 393–94. Specifically, in *Heinrich*, the court recognized that an *ultra vires* suit against an official "is, for all practical purposes, against the state," yet,

12

the court held that the remedy of prospective declaratory or injunctive relief is available to a successful claimant. *Heinrich*, 284 S.W.3d at 369–77. Consistent with *Heinrich*, the *Sawyer Trust* court expressed that a successful claimant in a trespass-to-try-title suit against a governmental official may "compel[] return of land illegally held"—a form of prospective relief allowed under *Heinrich*. *See Sawyer Trust*, 354 S.W.3d at 393 (citing *Heinrich*, 284 S.W.3d at 370–74); *see also BP Am.*, 290 S.W.3d at 356 n.19 (noting that rule set forth in *Heinrich* allowing successful plaintiff prospective relief in *ultra vires* suit would arguably permit *BP America* plaintiff to sue land commissioner to compel return of land to which State had no valid claim although sovereign immunity would bar claim for compensatory damages).

Finally, when noting *Lain* does not apply, Parker suggests she committed no unlawful act with respect to the property because she became mayor after the City's purchase. However, as we construe Hunegnaw's petition, he does not merely complain about an official's act of purchasing the property on behalf of the City; rather, he alleges that Parker, as current mayor, continues to wrongfully possess the property under an incorrect claim that the City holds superior title. Accordingly, we conclude that Hunegnaw pleads a claim within the trial court's jurisdiction and is not required to plead a waiver of immunity or separate *ultra vires* action. *See Lain*, 349 S.W.2d at 581–82.[5]

## 2. Parker's Contention that She Proved the City's Superior Title

On appeal, Parker also suggests that *Lain* remains viable and is applicable to the present case but the trial court heard evidence and Parker proved the City holds superior title to the property. Accordingly, Parker apparently presents an alternative contention that the trial court erred, even when applying *Lain*, by failing to decide the merits of

---

[5] In his petition, Hunegnaw states that, when *Lain* applies, it is irrelevant whether a governmental official committed an *ultra vires* act and *Heinrich* does not apply. As discussed above, the supreme court subsequently analogized a trespass-to-try-title suit against a governmental actor in his official capacity to an *ultra vires* suit. *See Sawyer Trust*, 354 S.W.3d at 393. Nevertheless, we conclude Hunegnaw sufficiently pleads an action within the trial court's jurisdiction by alleging Parker wrongfully possesses Hunegnaw's property under an incorrect claim that the City holds superior title notwithstanding his incorrectly distinguishing such action from an *ultra vires* suit, as subsequently clarified by the supreme court.

13

Hunegnaw's claim and thereby the plea in Parker's favor. In her appellate brief, Parker argues she established the City's superior title at the hearing on her plea by presenting the deed transferring the property to the City. In her brief, Parker also challenges the merits of Hunegnaw's claim that the initial transfers to Antony were invalid. Specifically, Parker contends that Herbert had authority under the power of attorney to make the transfers, Herbert's use of Hunegnaw's rubber-stamped signature did not render the deeds forgeries, and, regardless, the City was a bona fide purchaser of the property.

There is no reporter's record of the hearing conducted by the trial court. Parker seems to characterize the proceeding as a hearing on the merits of Hunegnaw's claim. However, in his appellate brief, Hunegnaw suggests the trial court has not yet heard evidence on the merits and thus properly denied the plea. We agree with Hunegnaw. In particular, the record indicates, at most, that the trial court conducted a hearing to consider Parker's jurisdictional challenge to Hunegnaw's *pleadings* and denied the plea pending resolution of the title dispute, as required under *Lain*.

Specifically, in her plea, Parker did not challenge Hunegnaw's jurisdictional facts pertaining to the merits of his claim because Parker challenged only Hunegnaw's pleadings. *See Miranda*, 133 S.W.3d at 226–27 (distinguishing plea to jurisdiction challenging plaintiff's pleadings from plea challenging plaintiff's alleged jurisdictional facts on which trial court must consider evidence relevant to jurisdictional dispute). Parker did not request the trial court to hear evidence and adjudicate the title dispute in order to resolve the plea because she focused instead on arguing that *Lain* is not viable or applicable in the present case. The entire gist of Parker's plea was an argument that she has the same immunity enjoyed by the City irrespective of the merits of Hunegnaw's allegations because he effectively sues the City, he does not plead a waiver of immunity or *ultra vires* act, and *Lain* does not negate this pleading requirement.

We acknowledge that, in her plea, Parker cited the deed transferring the property to the City and stated that the City holds "record title." However, this citation of evidence did not transform her challenge to Hunegnaw's pleadings into a challenge to his

14

jurisdictional facts. In particular, Parker seemed to cite the deed to support her arguments, addressed above, that (1) the claim against her is essentially an action against the City which is necessarily barred by governmental immunity because Parker asserts the City's claim to title, and (2) *Lain* is limited to situations in which the plaintiff undisputedly holds title and seeks to prevent the governmental official from asserting rights of use or occupancy. Further, it is undisputed that the City holds "record title"; but Hunegnaw alleges that the deed through which the City holds such "record title" is void because the earlier transfers to Antony were unauthorized, fraudulent, and effected via forgery of Hunegnaw's signature. In her plea, Parker did not mention, much less challenge, these allegations, or argue that, as a matter of law, such facts, even if true, do not void the subsequent transfers to the City. Likewise, Parker's statement on appeal that she presented the deed at the hearing does not demonstrate the trial court considered the merits of the title dispute; without a record, we cannot foreclose the possibility that Parker merely presented the deed to posit Hunegnaw's claim is barred by immunity solely because Parker asserts the City's claim to title—consistent with the reason she cited the deed in her plea.[6]

---

[6] In her plea, Parker did refer to the City as a "bona fide purchaser"—a contention that would arguably pertain to the merits of Hunegnaw's claim if raised in the plea as a challenge to the merits. However, Parker did not request the trial court to address bona-fide-purchaser status in order to resolve the title dispute or advance contentions regarding the effect of any such bona-fide-purchaser status on the title dispute. Instead, Parker apparently mentioned this purported status to again emphasize that any claim against Parker relative to the title dispute is effectively an action against the City: "It is clear from . . . the petition that Parker was sued in her official capacity because [Hunegnaw] alleges that Parker 'in her official capacity as Mayor of the City of Houston' was a 'bona fide purchaser[] in this real property transaction.' Therefore, Parker has the same immunity from suit as Houston." In fact, in a footnote, Parker effectively stated the bona-fide-purchaser issue was not relevant to the jurisdictional challenge because it concerned the merits of the case: "Although this point bears on equity rather than jurisdiction, [Hunegnaw] also admits that [the City] was a *bona fide* purchaser on the property and paid Antony 'a considerable sum of money' therefore." Even if Parker had referenced the City's purported bona-fide-purchaser status to challenge the merits of Hunegnaw's claim, Parker presented no evidence to establish all elements of such status. *See Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001) (stating bona fide purchaser is one who acquires property in good faith, for value, and without notice of any third-party claim or interest). In the plea, Parker asserted that Hunegnaw admitted the City was a bona fide purchaser. Hunegnaw did make such a direct admission in his superseded fifth amended petition, but he removed this admission in his live petition, alleging only that any such status afforded no protection in the present case because the original deeds transferring the property to Antony were forged.

Additionally, in its order, the trial court indicated that it denied Parker's plea because it had not yet heard evidence on the merits of Hunegnaw's claim. The court noted that *Lain* is applicable and ruled,

> . . . The Court, having considered the plea and the plaintiff's response, if any, as well as reviewing all matters of record in this suit, is of the opinion that [Parker's] Plea is not meritorious and should be denied  The Court hereby FINDS that it does have jurisdiction over [Parker] in this suit. . . .

Because Parker challenged only the pleadings, the trial court's ruling the plea was "not meritorious" indicates it determined only that Hunegnaw has *pleaded* a claim within the court's jurisdiction. Consequently, the trial court correctly ruled that it has jurisdiction under *Lain* to adjudicate the merits of Hunegnaw's claim and thereby resolve the jurisdictional issue.

Even if the hearing conducted by the trial court were a hearing on the merits, Parker could not demonstrate that the court erred by failing to resolve the title dispute in her favor; because there is no record of the hearing, we would presume that the evidence supports the trial court's order. *See Wilson v. Patterson*, No. 14-10-00943-CV, 2011 WL 4924252, at *1–2 (Tex. App.—Houston [14th Dist.] Oct. 18, 2011, no pet.) (mem. op.) (citing *Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2002); *Middleton v. Nat'l Fam. Care Life Ins. Co.*, No. 14–04–00428–CV, 2006 WL 89503, at *2 (Tex. App.—Houston [14th Dist.] Jan. 17, 2006, pet. denied) (mem. op.); *Hiroms v. Scheffey*, 76 S.W.3d 486, 489 (Tex. App.—Houston [14th Dist.] 2002, no pet.)).

Finally, we note that, since *Lain*, the Supreme Court of Texas in *Miranda* further refined the applicable standard when a plea challenging jurisdictional facts implicates the merits of the plaintiff's claim. *See Miranda*, 133 S.W.3d at 227–28. The defendant must meet the summary-judgment standard of proof for its assertion that the trial court lacks jurisdiction by negating a genuine issue of material fact regarding existence of a jurisdictional fact. *See id.* If the evidence creates a fact question regarding the jurisdictional issue, the trial court may not grant the plea, and the fact issue will be resolved at trial by the fact finder. *Id.* However, if relevant evidence is undisputed or

16

fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.* at 228.

On appeal, Parker does not specifically argue that she proved the City's superior title through the summary-judgment-like procedures authorized under *Miranda*. Instead, Parker primarily suggests she was entitled to prevail on the merits based on evidence presented at the hearing. However, according to Parker, this evidence was the same deed referenced in her plea. Nonetheless, to the extent Parker suggests the trial court erred by failing to resolve the merits and thereby the plea in Parker's favor under the summary-judgment-like procedures authorized under *Miranda*, Parker did not invoke application of those procedures because, for the reasons discussed above, she challenged only Hunegnaw's pleadings.[7]

Accordingly, Parker has not demonstrated she is entitled to prevail on the issue of title or right of possession—either in a hearing or through the summary-judgment-like procedures authorized under *Miranda*. We do not hold that Parker is foreclosed from hereafter presenting a plea to the jurisdiction challenging the merits of Hunegnaw's claim and invoking the procedures for resolving such a plea. However, at this juncture, because Parker has challenged only the pleadings, which affirmatively demonstrate jurisdiction, the trial court did not err by denying the plea. *See BP Am.*, 290 S.W.3d at 358 (affirming denial of land commissioner's plea to jurisdiction based on sovereign immunity because he had not demonstrated right to prevail on issue of title or right of possession, as required under *Lain*, by presenting evidence to trial court in a hearing or through the summary-judgment-like procedures since authorized under *Miranda*; instead, because commissioner merely claimed title on behalf of the State to support plea and had not

---

[7] As mentioned, Hunegnaw filed both a response to the plea and a "Motion for Evidentiary Hearing In Lieu Of Hearing On Mayor Parker's Plea To The Jurisdiction," arguing that, pursuant to *Lain*, he had pleaded a claim within the trial court's jurisdiction and requesting the trial court to abate or deny the plea pending an "evidentiary hearing" on the title dispute—the action apparently taken by the trial court. In these filings, Hunegnaw did reference evidence to support the merits of his claim. Regardless, his citation of evidence is immaterial to our resolution; because Parker did not challenge, much less negate, the merits of Hunegnaw's claim, the burden never shifted to Hunegnaw to raise a genuine issue of material fact on the claim. *See Miranda*, 133 S.W.3d at 227–28.

17

challenged whether plaintiff's facts, if proved, would establish title in the plaintiff as a matter of law, trial court had jurisdiction to adjudicate merits of trespass-to-try-title claim to decide "interwoven" issues of whether sovereign immunity applies and whether plaintiff entitled to relief).

We overrule both of Parker's issues and affirm the trial court's order.


/s/ Charles W. Seymore
Justice


Panel consists of Justices Frost, Seymore, and Jamison.