**Affirmed and Memorandum Opinion filed February 27, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00031-CV

---

## MAYOR ANNISE PARKER, IN HER INDIVIDUAL AND OFFICIAL CAPACITY, Appellant

### V.

## AFEWORK HUNEGNAW, Appellee

---

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2010-39565**

---

## M E M O R A N D U M   O P I N I O N

Appellant, Mayor Annise Parker, appeals the denial of her second amended plea to the jurisdiction, or alternatively motion for summary judgment, in a trespass-to-try-title suit brought by appellee, Afework Hunegnaw. We affirm.

### I. BACKGROUND

Between the year 2000 and April 2010, Hunegnaw traveled abroad for

extensive periods. During this period, Hunegnaw owned lots of real property in Harris County, referred to as 36A, 36B, 36F, 36G, and 36H.

On February 17, 2003, Hunegnaw executed a "Durable General Power of Attorney" ("the POA"), appointing Charles A. Herbert as Hunegnaw's "Attorney–in–Fact" and vesting Herbert with,

> full power to do any and every act and exercise any and every power that I might or could do or exercise through any other person and that my Attorney–in–Fact, in such Attorney–in–Fact's discretion, shall deem proper and advisable, intending hereby to vest in my Attorney–in–Fact a full and universal power of attorney, and not by way of limitation but as illustration, and including, but not limited to the following described real property:
>
>   . . .
>
> TRS 36F & 36G (001 *TR 63B) INSTITUTE PLACE–GLADITCH with full power to:
>
>> [among numerous other listed acts] sell, exchange, convey with or without covenants . . . or otherwise dispose of an estate or interest in real property or a right incident to real property . . .

Hunegnaw argues the POA applied only to lots 36F and 36G (referenced in the POA), whereas Parker contends the POA applied to all property owned by Hunegnaw with lots 36F and 36G listed merely as examples. In any event, the POA also provided,

> This Power of Attorney shall take effect upon my disability or incapacity, and shall remain in effect and may be relied upon fully unless hereafter revoked by an instrument signed by me.

On the same day that Hunegnaw executed the POA, he also gave Herbert a rubber stamp of Hunegnaw's signature.

In October 2004, lots 36A, 36B, 36F, 36G, and 36H were transferred to Treasa Antony via General Warranty Deeds, purportedly bearing Hunegnaw's signature. Hunegnaw alleges these deeds were executed with the stamp of his signature, he did not authorize such use of the stamp or otherwise authorize the transfers, and thus the deeds were forgeries.

In September 2008, Antony sold Lots 36A, 36B, and 36H (hereinafter "the property") to the City of Houston ("the City") via a General Warranty Deed. Hunegnaw claims this deed failed to transfer title to the City because the previous deeds transferring the property to Antony were forged. Hunegnaw alleges he discovered all of these transactions after they occurred and received no consideration.

Hunegnaw sued Herbert, Herbert's law firm, Antony, the notary of Hunegnaw's signature on the deeds transferring the property to Antony, and Parker, as the City's sitting mayor. In his live pleading, Hunegnaw's only claim against Parker is trespass to try title. Hunegnaw alleges Parker is "wrongfully withholding . . . possession" of Hunegnaw's property as a City official asserting the City holds title. Hunegnaw seeks (1) declarations that the deeds purportedly transferring title to Antony and subsequently to the City are void, and (2) an injunction precluding Parker from continuing to possess the property. Hunegnaw does not seek monetary damages against Parker.

Parker filed her first plea to the jurisdiction, contending that, based on Hunegnaw's pleading, the claim is barred by governmental immunity. Parker relied on authority holding that a suit against a government officer in her official capacity is essentially a suit against the governmental entity, and the official enjoys the same immunity as the entity unless the official has acted *ultra vires*—without legal authority or failed to perform a purely ministerial act. *See Univ. of Tex.*

*Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 401 (Tex. 2011); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Parker contended Hunegnaw does not allege any waiver of immunity or allege Parker acted *ultra vires*. Hunegnaw filed a response, requesting the trial court to abate or deny the plea pending an evidentiary hearing on the merits of the title dispute. After a hearing, the trial court denied the plea. Parker appealed to our court, and we affirmed. *Parker v. Hunegnaw*, 364 S.W.3d 398 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("*Parker I*").

We relied on authority from the Supreme Court of Texas recognizing legislative consent is not required to maintain a suit against a governmental official for recovery of title to, and possession of, land. *See id.* at 403–07 (citing *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 393–94 (Tex. 2011); *State v. Lain*, 349 S.W.2d 579, 581–82 (Tex. 1961)). The reasoning is that a governmental official possessing a plaintiff's property under an incorrect claim that the governmental entity holds title **is** acting *ultra vires*, i.e., without legal authority. *See id.* (citing *Sawyer Trust*, 354 S.W.3d at 393–94; *Lain*, 349 S.W.2d at 581–82 ). Thus, we recognized a distinction between a trespass-to-try-title suit against a governmental entity, which is barred by sovereign immunity, and such a suit against an official of the entity, for which resolution of the jurisdictional issue depends on the merits of the claim. *See id.* (citing *Sawyer Trust*, 354 S.W.3d at 393–94; *Lain*, 349 S.W.2d at 581–82).[1]

We further concluded that, to prevail on a plea to the jurisdiction in a trespass-to-try-title action, the official must prove the governmental entity's superior title and right of possession either (1) at a hearing, or (2) through the

---

[1] Hunegnaw names Parker as a defendant in both her official and individual capacities. However, in *Parker I*, we recognized that, based on the nature of his claim, Hunegnaw essentially sues Parker in only her official capacity. *See* 364 S.W.3d at 401.

4

summary-judgment-like procedures further refined in *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004), applicable when a plea challenging jurisdictional facts implicates the merits of the plaintiff's claim. *See Parker I*, 364 S.W.3d at 407–10 (citing *Sawyer Trust*, 354 S.W.3d at 393; *Miranda*, 133 S.W.3d at 227–28; *Lain*, 349 S.W.2d at 582). We held Parker had not established the City's superior title because (1) the appellate record indicated the trial court had conducted a hearing on only Parker's contention that Hunegnaw's pleadings failed to demonstrate jurisdiction—not on the merits of the title dispute, (2) even if the court had considered the merits, we were bound to uphold its order because there was no record of the hearing, and (3) Parker had not proved the City's superior title through a summary-judgment-like procedure. *See id.*

Parker filed a second amended plea to the jurisdiction, or in the alternative, motion for summary judgment (hereinafter "the plea") supported by evidence. This plea was an attempt to prove the City's superior title as required under *Parker I.* Hunegnaw filed a response, supported by some evidence, but not his affidavit. After hearing argument, the trial court orally announced it intended to grant the plea. The court also remarked it would entertain a motion for reconsideration if Hunegnaw's counsel, who was having difficulty communicating with his client, obtained evidence purporting to defeat the plea.

Hunegnaw filed a motion for reconsideration and attached his affidavit. Subsequently, the trial court signed an order granting Hunegnaw's motion for reconsideration and denying Parker's motion for summary judgment. Parker filed a motion for reconsideration of that order and a response and objections to Hunegnaw's motion for reconsideration. Our record does not contain a written ruling on Parker's motion or objections. Parker then filed this interlocutory appeal

5

from the trial court's order. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(5), (8) (West Supp. 2013).[2]

## II. ANALYSIS

At the hearing on the plea, the trial court heard arguments, but it was not an evidentiary hearing. Rather, Parker relied on the summary-judgment-like procedures refined in *Miranda*, applicable when a plea challenging jurisdictional facts implicates the merits of the plaintiff's claim. *See* 133 S.W.3d at 227–28. In such a plea, the defendant must meet the summary-judgment standard of proof by negating a genuine issue of material fact regarding existence of a jurisdictional fact. *See id.* If the evidence creates a fact question regarding the jurisdictional issue, the trial court may not grant the plea, and the fact issue will be resolved at trial by the fact finder. *Id.* However, if relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.* at 228. We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

In three issues, Parker contends the trial court erred by denying the plea because (1) Parker proved the City holds valid title, and Hunegnaw did not offer competent evidence raising a fact issue on title, (2) Hunegnaw dealt with the alleged deceiver and must bear any loss, and (3) Parker did not own, exercise control over, or act upon, the property, and is the wrong official for an *ultra vires* suit. Additionally, although not presented as a separate issue, Parker also suggests,

---

[2] In the order, the trial court expressly denied the motion for summary judgment and did not reference the plea. Parker presented the motion as an alternative to the plea and, on appeal, expressly challenges denial of the plea. The plea and motion were based on the same grounds, and the same standard applies to both. Therefore, we construe the order as denying both the plea and the motion. Consistent with Parker's brief, we will refer to the "plea," but our analysis and disposition applies equally to the motion.

6

in the body of her argument, that Hunegnaw is precluded from challenging the City's title because he failed to take action immediately upon learning of the transfers to Antony.

## A.    Issue regarding title

In her first issue, Parker contends the City was a bona fide purchaser and thus holds superior title to the property. To support this proposition in her plea, Parker presented (1) the General Warranty Deeds transferring the property from Hunegnaw to Antony, (2) the General Warranty Deed transferring the property from Antony to the City, and (3) the POA. Hunegnaw responded that Parker cannot be a bona fide purchaser because the deeds transferring the property to Antony were forged.

Status as a bona fide purchaser is an affirmative defense in a title dispute. *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001). To receive this special protection, one must acquire property in good faith, for value, and without notice of any third party claim or interest. *Id.*

A forged deed is void ab initio and inoperative. *Commonwealth Land Title Ins. Co. v. Nelson*, 889 S.W.2d 312, 318 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *Dyson Descendant Corp. v. Sonat Exploration Co.*, 861 S.W.2d 942, 947 (Tex. App.—Houston [1st Dist.] 1993, no writ); *Bellaire Kirkpatrick Joint Venture v. Loots*, 826 S.W.2d 205, 210 (Tex. App.—Fort Worth 1992, writ denied). Title to land cannot pass under a forged deed. *Commonwealth Land*, 889 S.W.2d at 318; *Bellaire Kirkpatrick*, 826 S.W.2d at 210. The fact that a grantee is an innocent purchaser is immaterial because one cannot obtain bona fide purchaser status when there is a forged deed in the chain of title. *Pure Oil Co. v. Swindall*, 58 S.W.2d 7, 10 (Tex. Comm'n. App. 1933, holding approved); *Commonwealth*

*Land*, 889 S.W.2d at 318; *Dyson Descendant*, 861 S.W.2d at 947; *Bellaire Kirkpatrick*, 826 S.W.2d at 210.

The deeds transferring the property to Antony and subsequently from Antony to the City recite they were all supported by consideration. What appears to be Hunegnaw's signature is affixed to the deeds transferring the property to Antony. A notary attested thereon that Hunegnaw personally appeared before her and executed the deeds. Apparently, Parker relies on the fact that the deeds appear regular on their faces to show the City acted in good faith and lacked notice of any claim to the property by Hunegnaw when it was purchased by the City. We need not decide whether Parker proved the City acted in good faith and lacked notice because Hunegnaw raised a genuine issue of material fact on whether his signature was forged on the deeds transferring the property to Antony.

As mentioned above, the trial court permitted Hunegnaw to file an affidavit after the hearing on the plea, and on appeal, Parker does not challenge that ruling. In the affidavit, Hunegnaw averred as follows:

> BEFORE ME, the undersigned authority, on this day personally appeared Afework Hunegnaw, who, first being duly sworn upon oath deposed and states as follows:
>
> 1. On February 17, 2003, I appointed [Herbert] as my attorney in fact under a Durable General Power of Attorney that applied only to [36F and 36G]. [Herbert's] authority under the Power of Attorney was not to take effect unless I was disabled or incapacitated. Accordingly, any use of the same heretofore was objectively fraudulent.
>
> 2. On or about February 17, 2003, at the request of [Herbert], I left a rubber stamp of my signature in the possession of my attorney [Herbert].
>
> 3. I traveled back and forth between the United States and Ethiopia multiple times between the year 2000 and April 30, 2010. My stay in each country lasted several months at a time.

8

4.     During the summer of 2008, I discovered that at least some of the lots in question were fraudulently transferred to [Antony], the wife of [Herbert] on October 12, 2004. Such transfer was fraudulent, unlawful and without consideration to me, because I never gave Herbert such authority to transfer the properties.

5.     After learning of the fraudulent and unlawful transfer, I obtained a copy of the transfer documents from The Harris County Clerk.

6.     After examination of the said transfer documents on April 26, 2010, it was discovered that, in place of an actual signature, the transfer was effected by the use of a rubber stamp of my signature, which was used without my authority and without my presence. By using a rubber stamp of Plaintiffs signature, Herbert was not acting within the realm of the power of attorney granted to him by me. Thus, the stamping of my signature by Herbert was a forgery, and true title was never actually transferred to [Antony].

7.     On or about April 26, 2010, it was discovered that said rubber stamp of my signature had been notarized by Defendant Carolina Figueroa (formerly Carolina Ruiz). This stamping and notarization of the stamp was done without my presence, knowledge, or consent. The stamp was used to transfer lots 36A, 36B, 36F, 36G and 36H [further description of the property].

8.     Following the fraudulent and illegal transfer to [Antony], lot 36A, 36B and 36H were then transferred by [Antony] to the City of Houston for a considerable sum of money. Such money was never tendered nor offered to Plaintiff, nor was Plaintiff informed that the subject property had been sold. These three lots are not specified in the Durable Power of Attorney. Therefore, [Herbert] had no right to the management of these lots under the Power of Attorney.

9.     I never authorized the transfer of my real property to [Antony] nor was I informed of said transfer. The properties were transferred outside my presence, and without my knowledge or authorization.

10. I never appeared before [Figueroa] for notarization of subject deeds transferring my property to [Antony]. Any deed transferring property to [Antony] was done outside my presence, and without my knowledge or authorization.

11. I never authorized the use of my rubber stamp signature to transfer my real property to [Antony]. I never requested notarization of my rubber stamp signature nor authorized [Figueroa] to notarize such stamped signature.

12. Every action taken by Herbert under this dormant power of attorney was fraudulent.

13. I was not present when my rubber stamp signature was used or when [Figueroa] notarized the stamped signature.

Further Affiant sayeth naught.

In summary, Hunegnaw averred, in pertinent part, that (1) his alleged signatures on the deeds transferring the property to Antony were made with the stamp, (2) Hunegnaw did not authorize use of the stamp to transfer the property, (3) the deeds were executed without his knowledge, and (4) contrary to the notary's attestation, Hunegnaw was not present when the deeds were executed and notarized and did not request her notarizations. We conclude such averments, if admissible and not controverted by conclusive evidence, are sufficient to raise a genuine issue of material fact on whether the deeds were forged.

Parker contends Hunegnaw did not raise a fact issue for several reasons: (1) Hunegnaw did not aver that his statements are true; (2) the statements are conclusory; and (3) by executing the POA and providing Herbert the stamp, Hunegnaw authorized his signatures. We disagree with all of these arguments.

### 1. No averment that statements are true

A notary attested on the affidavit that it was "SWORN TO AND SUBSCRIBED" by Hunegnaw before the notary, but Hunegnaw did not aver that his statements are true and correct. However, Parker waived her challenge to any

such defect because the record does not demonstrate she objected and obtained a ruling in the trial court.

A contention that an affiant's failure to state his assertions are true and correct is a complaint regarding a defect in form, which the complaining party waives by failing to object and obtain a ruling in the trial court. *Garcia v. Bank of Am. Corp.*, 375 S.W.3d 322, 330 n.9 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *New AAA Apartment Plumbers, Inc. v. DPMC–Briarcliff, L.P.*, No. 14–05–00485–CV, 2006 WL 2827275, *2 (Tex. App.—Houston [14th Dist.] Oct. 5, 2006, no pet.) (mem. op.); *see Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 736 (Tex. App.—Houston [14th Dist.] 2013, pet. filed) (en banc).

The trial court signed the order denying the plea six days after Hunegnaw filed the affidavit. Parker did not file any objections to Hunegnaw's affidavit during this period, despite the trial court's earlier indication that it would consider evidence filed after the hearing. On appeal, Parker does not mention the failure to object, much less advance any reason that she lacked an opportunity to object. Further, there is no record of the hearing at which the trial court heard the motion to reconsider, to show Parker objected at that time.

Parker filed her own motion to reconsider after the trial court signed the order. In that motion, Parker objected to the affidavit but did not make the same challenge to the form of the affidavit that she raises on appeal. Parker objected that the affidavit was self-serving, conclusory, contained unsubstantiated opinions, and was based on hearsay, although she did not obtain a ruling on these objections or object to the lack of a ruling. Parker did not object that Hunegnaw failed to aver his statements are true, assuming without deciding that such an objection after the trial court's order would have preserved error.

11

Accordingly, Parker waived her appellate complaint that Hunegnaw failed to aver his statements are true.

## 2. Contention that statements are conclusory

Parker further contends the affidavit contained conclusory statements. This complaint is a challenge to an alleged substantive defect, which Parker may raise on appeal even if she did not timely object in the trial court and obtain a ruling. *See Pico v. Capriccio Italian Restaurant, Inc.*, 209 S.W.3d 902, 909 (Tex. App.—Houston [14th Dist.] 2006, no pet.). A conclusory statement is "one that does not provide the underlying facts to support the conclusion." *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (quoting *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ)). A conclusory statement in an affidavit unsupported by facts is insufficient to defeat summary judgment. *C.A. Partners v. Spears*, 274 S.W.3d 51, 63 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

We acknowledge some of the averments challenged by Parker are arguably conclusory, particularly Hunegnaw's multiple references to Herbert's actions as "fraudulent" and "unlawful." However, Hunegnaw's affidavit raised a fact issue on whether the deeds were forged even if we disregard those statements. The pertinent averments—that Hunegnaw's alleged signatures on the deeds were made with the stamp, he did not authorize use of the stamp to transfer the property, and the deeds were executed and notarized without his knowledge or presence—are not conclusory. These are statements of fact which do not require underlying support.

In fact, Parker cites only one of those averments as purportedly conclusory— the statement that "it was discovered" the signatures were made with the stamp. Parker asserts Hunegnaw failed to provide facts about who made the discovery and how it was made. However, immediately before this statement,

Hunegnaw averred, "After learning of the fraudulent and unlawful transfer, I obtained a copy of the transfer documents from The Harris County Clerk." Construing the statements in context, it is reasonable to infer Hunegnaw personally discovered the use of the stamp by reviewing the deeds.

### 3. The POA and the stamp

Parker contends Hunegnaw authorized Herbert to sell the property by giving Herbert the POA and the stamp of Hunegnaw's signature. Parker suggests the authorization was provided through either each act alone or a combination of these acts.

Irrespective of the parties' dispute on whether the POA applied to all of Hunegnaw's property or only lots 36F and 36G (not sold to the City), the POA clearly provided it would take effect "upon [Hunegnaw's] disability or incapacity." There is no evidence, and Parker does not suggest, Hunegnaw was disabled or incapacitated when the property was transferred to Antony.

Parker suggests the fact Hunegnaw traveled abroad for significant periods indicates he meant for the POA to take effect immediately upon its execution because he needed someone to manage his affairs. However, such a conclusion is contrary to the express terms of the POA providing it would take effect upon Hunegnaw's disability or incapacity. There is no evidence that, contrary to such terms, Hunegnaw meant for the POA to take effect immediately, assuming without deciding the POA could be orally modified. In fact, Hunegnaw's affidavit negates such intention. Moreover, under our standard of review, we may not indulge the inference suggested by Parker, in her favor. Instead, we may indulge an inference in favor of Hunegnaw, that, by limiting the events triggering the POA, he may have made other provisions for managing his affairs while we was abroad, unless he became disabled or incapacitated.

13

Additionally, Parker contends that Hunegnaw's giving Herbert the stamp of his signature, in conjunction with the POA, established Hunegnaw intended to vest Herbert with immediate authority to manage Hunegnaw's affairs. Again, the affidavit negates such intention. Further, there is a contrary inference that Hunegnaw gave Herbert the stamp in case one of the events triggering Hunegnaw's authority under the POA occurred.

Parker also suggests that, regardless of Hunegnaw's intentions, giving Herbert the stamp necessarily authorized Herbert to transact business on Hunegnaw's behalf by making Herbert his agent, implied if not express. Parker cites only one Texas case, an unpublished opinion, in support. In *CRS Ins. Agency Inc. v. Moore General Agency, Inc.*, No. 09–95–196 CV, 1997 WL 34388, *5–6 (Tex. App.—Beaumont Jan. 30, 1997, no pet.) (not designated for publication), the court held the evidence was sufficient to support a finding, after a bench trial, that the defendant company was a party to the contract at issue which bore its representative's signature. The representative testified he did not sign the contract or grant his employee who was shown as witness authority to sign on his behalf. *Id.* at *5. The court held that even if the trial court believed the representative did not personally sign the contract, the court could have found he gave the employee authority to sign on his behalf. *Id.* The court stated that, by allowing the employee to possess and control the representative's signature stamp, the representative clothed the employee with apparent authority to use the representative's signature to legally bind the company. *Id.*

*CRS* is distinguishable from the present case in pertinent respects. That case was an appeal from a bench trial; thus, the appellate court was required to uphold the judgment as long as sufficient evidence supported the finding that the representative signed, or authorized his signature on, the contract; and the trial

14

court was free to weigh the evidence, disbelieve the representative's testimony, and discount controverting evidence. *See id.* at *5–6. In contrast, under the summary-judgment standard, Parker must conclusively establish that Hunegnaw vested Herbert with immediate authority to use the stamp for any purpose; and we are required to believe Hunegnaw's testimony negating such authority. Moreover, the *CRS* court cited other evidence showing the employee was given authority to sign business documents with the stamp and she used it on other relevant documents. *Id.* at *5. In contrast, there is no other evidence demonstrating Hunegnaw intended to vest Herbert with such authority.

In summary, Hunegnaw raised a genuine issue of material fact on whether the deeds transferring the property to Antony were forged and thus whether the City was a bona fide purchaser and holds superior title.[3] We overrule Parker's first issue.

## B.    Contention that Hunegnaw "dealt" with the "alleged deceiver"

In her second issue, Parker contends that even if there is a fact issue on whether the deeds were forged, Hunegnaw, not the City, is the innocent party who must bear the loss because he was the party who "dealt" with Herbert. However, the fact that a forgery in a chain of title precludes bona fide purchaser status negates that Hunegnaw is necessarily the party who must bear the loss. Instead,

---

[3] When originally responding to the plea, Hunegnaw presented deposition testimony of the notary to the deeds transferring the property to Antony. Parker relies on this testimony as confirming Hunegnaw "probably signed or confirmed the transfer to Antony." The notary acknowledged the signature on all three deeds appeared to be stamped and testified she was "pretty sure," but not "a hundred percent sure," Hunegnaw did not stamp the deeds in her presence but "brought it to [her] like that." Thus, the notary's testimony was equivocal and cast doubt on her attestation on the deeds that they were signed in her presence, even if via a stamp. Nonetheless, we need not decide whether her testimony creates a fact issue because pertinent statements in Hunegnaw's affidavit created a fact issue. Even if the notary's testimony may be construed as asserting Hunegnaw asked her to notarize his stamped signatures, his affidavit controverts her testimony.

the fact issue to be resolved is whether the deeds were forged, and disposition of the title dispute does not turn on the fact that Hunegnaw dealt with Herbert. Accordingly, we overrule Parker's second issue.

## C.     Hunegnaw's failure to immediately challenge the transfers

We next consider Parker's additional suggestion, in the body of her brief, that Hunegnaw is precluded from challenging the City's title because he failed to take action immediately upon learning of the transfers to Antony. Parker emphasizes that Hunegnaw admitted he learned of the transfers to Antony in "summer 2008," yet Hunegnaw "did nothing" before the City bought the property on September 4, 2008. Parker suggests that, immediately after learning of the transfers to Antony, Hunegnaw should have sued Herbert and Antony and filed a revocation of the POA, "thereby notifying the world" that Herbert lacked authority to make the transfers.

Construing the affidavit in the light most favorable to Hunegnaw, his using the general term "summer 2008" does not conclusively mean before September 4, 2008; persons may have different interpretations of when "summer" ends, especially considering that summer does not officially end until later in September. Thus, Parker has not established Hunegnaw learned of the transfers to Antony before the sale to the City. Further, Parker's suggestion hinges on the unproven proposition that the POA authorized the transfers and therefore it was necessary for Hunegnaw to revoke the POA.

Regardless, Parker does not cite any authority supporting the proposition that Hunegnaw is precluded from challenging the City's alleged title by his failure to take one or both of the above-listed actions before the City purchased the property. In fact, Parker does not identify on what theory she relies—whether waiver, estoppel, ratification, or some other theory. Nevertheless, neither consent,

16

waiver, nor estoppel can give any legal effect to a forged deed. *Commonwealth Land*, 889 S.W.2d at 318; *Bellaire Kirkpatrick*, 826 S.W.2d at 210. Accordingly, Parker has not established that Hunegnaw is precluded from challenging the City's title by his failure to immediately challenge the transfers to Antony.

**D.      Contention that Parker is the incorrect official for an *ultra vires* suit**

In her third issue, Parker contends that, even if Hunegnaw could prove superior title, Parker is the incorrect official to be named as a defendant because she is not the official acting *ultra vires*.

In support, Parker first relies on the fact that the City bought the land before Parker became mayor. We rejected this same contention in *Parker I*. *See* 364 S.W.3d at 407. We held that Hunegnaw does not merely complain about an official's action of purchasing the property on behalf of the City; rather, Hunegnaw alleges that Parker, as current mayor, continues to wrongfully possess the property under an incorrect claim that the City holds superior title. *Id.*

Parker next argues the property is used as a city park and therefore is under the control of the Houston Parks and Recreation Department, not the mayor. However, Parker did not present evidence in the trial court (1) demonstrating the use of the property, (2) establishing the identity of the official(s) holding and controlling the property, (3) negating that Parker lacks any control over decisions regarding the property even if it is under the purview of the Parks and Recreation Department, or (4) addressing whether a mayor may always be considered as an official acting on behalf of the city when there a title dispute between a party claiming ownership of property held by a city. On appeal, Parker makes a general reference to an extensive webpage for the City's Parks and Recreation Department, purporting to show the property is used for a certain park, but she did not mention this webpage in her plea or attach it as evidence.

17

In fact, in the plea, Parker did not present the argument she now raises on appeal. Parker asserted only that she is not acting *ultra vires* because the City holds superior title to the property. Parker failed to contend, as argued on appeal, that even if the City does not hold superior title, Parker is not the official holding and controlling the property and asserting the City's ownership. We recognize the recent authority from the Supreme Court of Texas holding a claim of immunity by a governmental entity may be raised for first time on appeal because the claim is an issue implicating subject matter jurisdiction. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 94–97 (Tex. 2012). However, we emphasize Parker's failure to present the argument in the trial court as demonstrating why there is no supporting evidence in the record.

The argument raised on appeal is not a matter of the sufficiency of Hunegnaw's pleadings but rather implicates the merits of his complaint; i.e., whether Parker is exercising control over the property. Therefore, Parker was required to present evidence, sufficient under the summary-judgment standard, to establish her contention. *See Miranda*, 133 S.W.3d at 227–28. Even if Parker was not required to raise the argument in the trial court, none of the evidence otherwise presented in the trial court establishes she has no control over the property. Finally, because Parker did not raise her contention in the trial court or present supporting evidence, Hunegnaw has had no opportunity to present evidence opposing such contention.

Accordingly, Parker has failed to establish she is the incorrect defendant for Hunegnaw's *ultra vires* suit. We overrule Parker's third issue.

### III. CONCLUSION

In summary, Parker failed to prove the City holds superior title to the property or that an *ultra vires* suit may not otherwise be asserted against Parker.

18

Accordingly, the trial court did not err by rejecting Parker's claim that she enjoys governmental immunity and denying her second amended plea to the jurisdiction or alternatively motion for summary judgment.

We affirm the trial court's order.


                    /s/     John Donovan
                           Justice


Panel consists of Justices McCally, Donovan, and Brown.